617 So.2d 59 (1993)
Rockie A. FORREST
v.
WATERMAN STEAMSHIP CORPORATION.
No. 92-CA-1877.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Writ Denied June 4, 1993.
*60 Patricia D. Miskewicz, Ramirez & Miskewicz, New Orleans, for plaintiff-appellant Rockie A. Forrest.
J. Daniel Rayburn, Jr., Patrick H. Patrick, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee Waterman S.S. Corp.
Before KLEES, BYRNES and LOBRANO, JJ.
KLEES, Judge.
This is a maritime personal injury action brought in state court. Plaintiff Rockie A. Forrest, a deckhand employed by Gulf South Marine Transportation Company [hereinafter "Gulf South"], was injured on May 25, 1990 while working aboard a barge in the tow of the M/V Mr. T, a pushboat owned by his employer. There were nine barges in the tow of the M/V Mr. T., one "regulation" barge owned by Marine Equipment Management Corporation, and eight virtually identical "LASH" barges, which were owned by defendant Forest Lines, Inc.
Plaintiff initially filed suit against Waterman Steamship Company, which he mistakenly believed was the owner of the LASH barges. Waterman was dismissed from the suit and Forest Lines, Inc. was substituted when it was determined that Forest Lines actually owned the barges. Plaintiff also amended his petition to include Jones Act and maintenance and cure claims against his employer, Gulf South. Prior to trial, plaintiff settled his claim against Gulf South, and Gulf South was dismissed from the litigation.
The remaining general maritime law and unseaworthiness claims against Forest Lines were tried without a jury on February 11, 12 and 13, 1992.[1] On April 30, 1992, the trial court issued judgment in favor of defendant, dismissing plaintiff's suit. In his Reasons for Judgment, the trial judge indicated that plaintiff had failed to prove by a preponderance of the evidence that his injury had occurred on board one of the LASH barges rather than on the regulation barge, which was not owned by defendant. It is from this judgment that plaintiff appeals.
The crucial issue at trial was whether plaintiff proved that his injury occurred on board one of defendant's barges. The M/V Mr. T was connected directly to the regulation barge and the LASH barges were strung out consecutively in a straight line from the regulation barge. Plaintiff testified that while the flotilla was making its way to dockage, one of the rigging lines connecting the starboard sides of the LASH barges and the regulation barge snapped. Plaintiff was instructed by the pilot of the M/V Mr. T to replace the broken tow line. According to plaintiff, he first went on the regulation barge and attached a new wire, tightening the cable using a ratchet. He then jumped onto the LASH barge and began to tighten the same wire using a winch. According to plaintiff, he then moved to the other side of the LASH barge and was tightening another wire using a winch when a spring-loaded component of the winch known as the pawl or "dog" suddenly gave way and caused him to fall backwards onto a metal lifting post, injuring himself.
To refute plaintiff's testimony, defendant introduced two accident reports. On June 20, 1990, about a month after the accident, plaintiff went to the office of Gulf South to pick up a maintenance and cure check and was reminded by Karl Gonzales, executive vice-president of Gulf South, that he had to fill out some accident reports concerning his alleged accident so that Gulf South could continue to provide maintenance and cure.[2]
Plaintiff, who apparently wasn't feeling well, informed Carl Gonzales that he was unable to fill out the forms at that time and asked if he could take the forms home. Mr. Gonzales allowed plaintiff to take the *61 forms home. Mr. Gonzales testified that the completed forms were returned to him at the office on the following day by plaintiff's stepdaughter. He immediately date stamped them. Mr. Gonzales identified the two accident reports introduced into evidence as being the same ones he had received and had date stamped that day.
On one of the accident reports, plaintiff's accident was described as follows: "Snatched on ratchet pelican hook came undone I flew across barge landed on back side." The second accident report described the accident as follows: "Tightened up a ratchet slack gave from cable and I flew back on bit cones." The significance of these descriptions is that the evidence clearly showed that a "ratchet" and a "pelican hook" are two things which did not exist on the LASH barges, but rather were used on the regulation barge. Plaintiff's statement that he was injured by a "ratchet" also appeared in the written histories of several physicians who treated him after the accident.
At trial, plaintiff stated repeatedly that although he said "ratchet", he actually meant "winch". He stated that he remembered having taken the accident reports home, and that his wife had probably filled them out using information he had given her, because he couldn't read or write. His step-daughter had returned them to Gulf South the next day. However, he denied that it was his signature on the accident reports produced at trial. He did not think the documents shown to him at trial were the same ones he had taken home. He did not know who had filled out the ones introduced at trial.
The primary issue on appeal is the credibility of plaintiff. The defendant introduced the accident reports and the doctors' histories in an attempt to discredit plaintiff's testimony as to how the accident occurred. There were no witnesses to the accident, and there was no other objective physical evidence as to how or where the accident occurred because the barges could not be examined afterward.
The trial judge obviously did not believe the plaintiff's story. On appeal, plaintiff's counsel argues that the trial judge erred in placing too much weight on the accident reports even though plaintiff denied their authenticity. Counsel for the plaintiff also argues that the trial judge erred in refusing to admit circumstantial evidence, which would have shown that winches such as the one plaintiff claims caused his accident fail frequently. We agree with the trial judge that this evidence is completely irrelevant and therefore was properly excluded.
Because plaintiff's claim is brought under the general maritime law of the United States, our standard of review in this case must correspond to that of a federal appellate court. Guilbeau v. Calzada, 240 So.2d 104 (La.App. 4th Cir.1970). Under federal law, the findings of the trial judge may not be disturbed on appeal unless they are clearly erroneous, and further, due regard shall be given to the opportunity of the trial judge to judge the credibility of witnesses. Fed.Rule Civ.Pro. 52(a); Sutton v. Central Gulf Lines, Inc., 433 So.2d 888 (La.App. 5th Cir.1983).
In our view, the instant case turns on the credibility of the plaintiff because he is the only one who knows how the accident occurred. According to his Reasons for Judgment, the trial judge determined, based on the inconsistencies in the plaintiff's testimony and the evidence tending to discredit his story, that the plaintiff was not believable. He therefore concluded that the plaintiff had failed to prove by a preponderance of the evidence that his injury occurred aboard one of the LASH barges. We do not find this conclusion to be clearly erroneous in light of the total evidence presented, especially giving due deference to the trial judge as the judge of credibility.
Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The trial judge struck plaintiff's request for a jury, citing La.Code Civ.Pro. art. 1732(6) as authority. Plaintiff applied to this court for supervisory writs, which were denied.
[2] For some unknown reason, plaintiff did not make out an accident report on the day of the accident, as per Gulf South's policy.