676 So.2d 89 (1996)
Edward D. MILSTEAD
v.
DIAMOND M OFFSHORE, INC., et al.
No. 95-C-2446.
Supreme Court of Louisiana.
July 2, 1996.
*91 Cliffe Edward Laborde, III, Dean A. Cole, Laborde & Neuner; for Applicant.
Elwood C. Stevens, Jr., John W. Lee, Jr., Kleinpeter, Schwartzberg & Stevens; for Respondent.
VICTORY, Justice.[*]
We granted certiorari in this maritime personal injury case to resolve a conflict among the circuits regarding the standard of appellate review to be applied when reviewing admiralty cases decided in state courts under the "saving to suitors" clause and under the Jones Act, and to address the appropriateness of awarding prejudgment interest on future damages. We find that the federal principles of appellate review are not binding upon our state courts in the exercise of concurrent maritime jurisdiction, and that Louisiana's manifest error standard of review controls. We further find that federal law clearly precludes the award of prejudgment interest on future damages, including future lost earnings and future pain and suffering.

FACTS & PROCEDURAL HISTORY
In 1992, Edward D. Milstead worked as a floor hand on a semi-submersible offshore derrick, called the New Era, which was owned and operated by his employer, Diamond Offshore, Inc. and Diamond M-ODECO Offshore, Inc.[1] On September 8, 1992, Milstead was injured while assisting his fellow crewmen in performing a routine "cutting and slipping" operation, which consists of removing and replacing worn drill line from the drill block that moves up and down in the derrick. The task is achieved by attaching new drill line to an air hoist and lifting it from the drill floor into the derrick, whereupon it is thread through the drill block and onto large spools.
Tommy Hale, the driller supervising the "cutting and slipping" operation, assigned Milstead the responsibility of preventing the drill line from rubbing certain hydraulic hoses as it was being lifted. In order to accomplish this task, Milstead climbed onto the motor shed which is located approximately 12-15 feet above the drill floor and is surrounded by a double handrail. As the drill line was raised, Milstead leaned over the rail and pulled it away from the hoses with his hand. He continued to do this intermittently, each time leaning farther over the handrail as the drill line was hoisted higher into the derrick. Eventually, the drill line was raised to a point beyond Milstead's reach. He then extended his torso through the top and bottom handrails, sat on the bottom handrail, and crossed his legs around the bottom of one of the vertical posts. From this position, Milstead was able to lean well past the handrail to reach the drill line with his right hand while holding on with his left hand. While leaning in this manner, the drill line came loose from the air hoist and fell striking Milstead's hard hat and causing him to fall backwards to the floor of the motor shed. As a result, he sustained injuries to his knees, neck, back and head.
On June 11, 1993, Milstead filed suit in state court against Diamond M under general maritime law and the Jones Act, 46 U.S.C. 688 et seq. The defendant's liability was predicated upon the alleged unseaworthiness of the vessel; failure to provide the plaintiff with a safe working environment; failure to enforce proper and safe rules of seamanship and supervision; and failure to take appropriate means or precautions for the plaintiff's safety.
Following a bench trial, the defendant was found liable under general maritime law as owner of the vessel, and under the Jones Act as the plaintiff's employer. In its reasons for judgment, the trial court concluded that the defendant breached its duty to the plaintiff by failing to train him to keep the drill line off of the hydraulic hose, and by failing to provide him with the proper equipment to do so (e.g., a hook or rope). The trial court acknowledged the plaintiff's corresponding *92 obligation to perform his duties in a non-negligent manner. However, it assigned no comparative fault to the plaintiff, concluding that extension of his upper body between the handrails and failure to wear a safety harness in violation of company policy did not contribute to his injuries.
The trial court held that as a result of the accident Milstead aggravated a preexisting knee injury, sustained injuries to his lower back, neck and head, and that he suffers severe psychological injury as a result of the physical pain and trauma. The trial court further concluded that these injuries will plague the plaintiff for the rest of his life, and that he will not be able to return to gainful employment. Based upon these findings, the plaintiff was awarded: $150,000.00 for past and future physical pain and suffering; $150,000.00 for past and future mental pain and suffering; and $953,536.40 for past and future economic loss. The trial court further found that the defendant owed $10,084.95 in past medical expenses, that the plaintiff had not reached maximum medical cure and that the defendant was obligated to continue providing cure until that time. Prejudgment interest was awarded on each of these sums from the date of judicial demand.
The plaintiff's claims for penalties and attorney's fees based upon the defendant's alleged arbitrariness and capriciousness in the failure to pay cure were denied upon the trial court's finding that appropriate delay for investigative purposes occurred. Additionally, the plaintiff's claims for punitive damages on the general maritime claim were denied.
The defendant and the plaintiff both appealed to the Louisiana Third Circuit Court of Appeal. Milstead v. Diamond M Offshore, Inc., 94-1582 (La.App. 3d Cir. 9/6/95), 663 So.2d 137. The defendant argued that the trial court erred in the following respects: (1) by finding that the plaintiff was unable to return to work; (2) by adopting the economic report of plaintiff's expert without providing any reason for rejecting the opinions of the defendant's economist; (3) by failing to assign comparative fault to the plaintiff; (4) by failing to address the extent of the aggravation of the plaintiff's preexisting knee condition and how it affected the damage award; and (5) by awarding prejudgment interest on the awards for future damages. The plaintiff contended that the trial court erred in failing to award future medical expenses and punitive damages.
Before addressing the parties' specific assignments of error, the court of appeal first determined that Louisiana's manifest error standard of appellate review, and not federal standards of appellate review, should be employed when examining state court suits instituted under the Jones Act and general maritime law. Applying that standard, the court of appeal affirmed the trial court's judgment in all respects, except to amend it to reflect the trial court's ruling that the defendant was obligated to continue paying cure.
With regard to the issue of prejudgment interest, the court of appeal acknowledged that the U.S. Fifth Circuit Court of Appeal has held that prejudgment interest cannot be awarded on future damages. Milstead, 94-1582 at p. 22, 663 So.2d at 149, citing Brister v. A.W.I., Inc., 949 F.2d 1160 (5th Cir.1991); Martin v. Walk, Haydel & Associates, Inc., 794 F.2d 209 (5th Cir.1986); Williams v. Reading & Bates Drilling Co., 750 F.2d 487 (5th Cir.1985). However, the court of appeal further acknowledged that there is disagreement within the third circuit regarding the application of this rule of law, and that in some cases the circuit has affirmed awards of prejudgment interest on future economic losses, including future lost earnings. Milstead, 94-1582 at p. 22-23, 663 So.2d at 150, citing McFarland v. Justiss Oil Co., Inc., 526 So.2d 1206 (La.App. 3d Cir. 1988); Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3d Cir.1992), writ denied, 610 So.2d 819 (La.1993); Gray v. Texaco, Inc., 610 So.2d 1090 (La.App. 3d Cir.1992), writs denied, 616 So.2d 686, 687 (La.1993). Relying on this line of third circuit cases, the court of appeal affirmed the trial court's award of prejudgment interest on all of the damages, past and future.

STANDARD OF APPELLATE REVIEW
Whether an admiralty case tried in state court should be reviewed under state or federal *93 standards of appellate review has received much attention from Louisiana's courts of appeal in recent years. Many of the circuits have decided the issue differently, obviating this Court's final resolution of the conflict.[2]
To appreciate the struggle faced by the courts of appeal, it is important to understand the sources from which both state and federal courts derive their subject matter jurisdiction in maritime cases. As a general proposition, maritime law in the United States is federal law. American Dredging Co. v. Miller, 510 U.S. 443, 445-46, 114 S.Ct. 981, 984, 127 L.Ed.2d 285 (1994); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 4-1 (2d ed.1994); Thomas C. Galligan & Jean Paul P. Overton, Developments in the Law 1994-1994: A Faculty Symposium, 55 La.L.Rev. 469 (1995). This proposition is based upon Article III, § 2, cl. 1 of the United States Constitution, which provides that the federal judicial power "shall extend... to all Cases of admiralty and maritime Jurisdiction." See also 28 U.S.C. § 1333(1).
Notwithstanding, federal-court jurisdiction over maritime cases has not been entirely exclusive. American Dredging, Co., supra. Section 1333(1) of Title 28 of the United States Code, which is the successor to the Judiciary Act of 1789, bestows upon the federal district courts "original jurisdiction, exclusive of the courts of the States," of admiralty and maritime cases, "saving to suitors in all cases all other remedies to which they are otherwise entitled." The emphasized language, commonly referred to as the "saving to suitors" clause, has been interpreted as giving states the concurrent power to hear in personam admiralty cases.[3]American Dredging, Co., 510 U.S. at 446-47, 114 S.Ct. at 985; SCHOENBAUM, supra § 4-2; *94 Galligan, Developments in the Law, supra notes 9-10. Thus, a maritime plaintiff may elect to pursue his in personam action in either state or federal court.
Generally, state courts exercising concurrent maritime jurisdiction are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence. Southern Pacific Company v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); Green v. Industrial Helicopters, 593 So.2d 634 (La.1992), citing Powell v. Offshore Navigation, Inc., 644 F.2d 1063, 1065 n. 5 (5th Cir.1981).[4] However, they may adopt such remedies, and attach to them such incidents as they see fit, so long as they do not attempt to make changes in the substantive maritime law.[5]Offshore Logistics v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924); Lavergne v. Western Co. of North America, 371 So.2d 807 (La.1979); SCHOENBAUM, supra § 4-4; Galligan, Developments in the Law, supra note 14.
The seminal case in this area of the law is Southern Pacific Company v. Jensen, supra. There, the United States Supreme Court found that application of New York's Workmen's Compensation Act in a maritime case tried in state court was an unconstitutional intrusion on federal admiralty jurisdiction. In so finding, the Court stated that no state "legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Jensen, 244 U.S. at 215-16, 37 S.Ct. at 528-29.
Thus, after Jensen the key consideration in determining whether state laws apply in maritime cases is uniformity. Nonetheless, this demand for uniformity is not inflexible and does not totally preclude application of state laws. Rather, since Jensen, the United States Supreme Court has made clear that the decision whether to apply a state rule must be based upon a balancing of state and federal interests. See, Kossick v. United Fruit Co., 365 U.S. 731, 739, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961), rehearing denied, 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961) ("[T]he process is surely rather one of accommodation, entirely familiar in many areas of overlapping state and federal concern....").
Another consideration in this analysis that has recently been given significant credence by the United States Supreme Court is the procedural/substantive distinction. In American Dredging Co., supra, the plaintiff was injured while working on the Delaware River, and filed a Jones Act and general maritime claim in state court in New Orleans. Applying federal forum non conveniens rules, the state trial court dismissed the plaintiff's claims, finding that there were other more appropriate forums, including: Mississippi, the plaintiff's residence; Pennsylvania, where he was living and working; and New Jersey, his employer's principal place of business. The Louisiana Fifth Circuit Court of Appeal affirmed the dismissal. Thereafter, this Court unanimously reversed finding that state courts are not bound to apply the federal doctrine of forum non conveniens because it is not a substantive feature of general maritime law. Miller v. American Dredging Co., 595 So.2d 615, 619 (La.1992).
In an opinion authored by Justice Scalia, the United States Supreme Court affirmed this Court's decision, finding that it is permissible for states to exclude application of the federal doctrine of forum non conveniens. In so finding, the Court applied the preemption test enunciated in Jensen, supra. The Court concluded that the doctrine of forum non conveniens neither originated in admiralty nor has exclusive application there. Thus, Louisiana's refusal to apply forum non conveniens principles does not work material prejudice to a characteristic feature of general maritime law. American Dredging Co., 510 U.S. at ___, 114 S.Ct. at 987.
*95 The Court then found that uniform application of the doctrine of forum non conveniens is not necessary to maintain proper harmony of maritime law. According to the Court, the doctrine of forum non conveniens is dissimilar from other matters which have been held to be preempted by federal admiralty law. Of primary importance to the Court was the procedural nature of the doctrine. Because of its procedural characteristics, the Court found that maritime actors do not rely on it in making their business decisions. American Dredging Co., 510 U.S. at 452-54, 114 S.Ct. at 988-89. Of secondary importance to the Court, was the consideration that the doctrine is not likely to produce uniform results since the trial courts are vested with great discretion in its application. American Dredging Co., 510 U.S. at 454, 114 S.Ct. at 989.
The importance of the procedural/substantive distinction was further highlighted by Justice Souter's and Justice Stevens' concurrences. Justice Souter opined that the characterization of a rule as substantive or procedural is usually the determining factor when deciding whether state or federal law applies in an admiralty case. American Dredging Co., 510 U.S. at 457, 114 S.Ct. at 990 (Souter, J., concurring). This sentiment was echoed by Justice Stevens, who considered the procedural/substantive distinction enough to decide the case. American Dredging Co., 510 U.S. at 460-62, 114 S.Ct. at 992-93 (Stevens, J., concurring).
The importance of the procedural/substantive distinction in the maritime choice of law arena is not new. This Court's decision in Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986), reflected the importance of such considerations as they concern the applicable scope of review in state maritime cases. There, the plaintiff, a passenger on a crew boat, was injured when he slipped on a stairway. He sued under general maritime law, and was awarded $250,835.00 in damages. The owner of the vessel was found to be 10% at fault, absent entities were found to be 30% at fault and the plaintiff was found to be 60% at fault. The trial court cast the owner of the vessel with the absent entities' percentages of fault, making the owner liable for 40% of the damages.
The plaintiff and the vessel owner appealed. Citing Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971), the court of appeal concluded that it was obligated to employ the federal standard of review. Upon review, the court concluded that the plaintiff's claims regarding the introduction of prior claims' evidence was improperly admitted into evidence, and the case was remanded for a new trial. This Court found that the court of appeal's remand was erroneous, and that it should have reviewed the case de novo. In so finding, this Court concluded that the court of appeal's reliance upon Trahan, supra, a Jones Act case, in deciding that the federal standard of review governed, was improper and that Louisiana's procedural law controlled as to the scope of appellate review in general maritime cases. Daigle, 488 So.2d at 682, citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). In a footnote, this Court also went further and hinted that the finding in Trahan, supra, on the scope of review issue may have been displaced by Icicle Seafoods, Inc., supra. Daigle, 488 So.2d at 681 n. 3. Thus, even prior to rendition of American Dredging Co., supra, there was authority from the United States Supreme Court, and from this Court, for application of state procedural laws in both general maritime cases and Jones Act cases.
Having defined the test for deciding maritime choice of law questions, we now turn to the issue at hand: Whether state or federal standards of appellate review apply in general maritime and Jones Act cases.
A "substantive law" is one that either establishes new rules, rights and duties or changes existing ones. A "procedural law" is one that prescribes a method for enforcing a substantive right and relates to the form of the proceeding or the operation of the laws. Rousselle v. Plaquemines Parish School Board, 93-1916 (La. 2/28/94), 633 So.2d 1235; Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714. See also, BLACK'S LAW DICTIONARY 1203 (6th ed.1990).
*96 Applying these definitions, it is obvious that standards of appellate review are procedural in nature. See Maxwell v. Olsen, 468 P.2d 48, 52-3 (Alaska 1970) (States may apply their own appellate standards of review in maritime cases because "questions pertaining to the scope of appellate review are procedural in character."). Furthermore, under the Jensen test, as applied in American Dredging, Inc., supra, it is clear that standards of appellate review are not characteristic features of general maritime law, and application of Louisiana's state standards of appellate review would in no way interfere with the proper harmony and uniformity of general maritime law. Thus, we find, as did the court of appeal, that Louisiana courts of appeal should apply the state manifest error standard of review in general maritime and Jones Act cases.
The defendant argues that even if the state standard of review is applicable, the appellate court erred in failing to conduct a de novo review of this case under Bloxom v. Bloxom, 512 So.2d 839 (La.1987). Therein, we declined to accord the usual degree of deference to a trial court's findings because the underlying theory could not be discerned from either its reasons or from the record. Bloxom, 512 So.2d at 843. However, this is an exceptional remedy available only when the trial court's "findings, reasons and exercise of discretion are [not] necessarily and clearly implied by the record." Bloxom, supra. Such is not the case here. After reviewing the record and evidence presented, we agree with the court of appeal's conclusion that the "`trial court's path may reasonably be discerned' and that the trial court's factual findings are entitled to be reviewed under the manifest error standard." Milstead, 663 So.2d at 143.
The defendant argues that the trial court was manifestly erroneous in: (1) finding that the plaintiff is unable to return to work; (2) adopting the economic report of plaintiff's expert without providing any reason for rejecting the opinions of the defendant's economist; (3) failing to assign comparative fault to the plaintiff; and (4) failing to address the extent of the aggravation of the plaintiff's preexisting knee condition and how it affected the damage award.
After reviewing the evidence and testimony presented, we conclude that the court of appeal correctly found no manifest error in the trial court's decision on these issues. The finding that the plaintiff is unable to return work was made after hearing conflicting testimony and this finding was not manifestly erroneous. In addition, under the standard enunciated in Bloxom, it can be implied from the record that the trial court relied on the plaintiff's expert report because this was the only report that calculated damages consistent with the trial court's finding that plaintiff could not return to gainful employment. Likewise, the trial court's failure to assign comparative fault to the plaintiff was not manifestly erroneous as it appears from the record that any negligence on the part of the plaintiff did not contribute to his injuries. Lastly, the trial court did not err in failing to reduce the plaintiff's recovery because of his preexisting knee injury. It is clear from the record that the preexisting condition, caused by a football injury and resultant surgery in 1984, did not cause plaintiff disability prior to the aggravation, as evident by the fact that he continued to work offshore and engage in normal activities prior to the 1992 accident and that the 1992 accident aggravated the preexisting condition.

PREJUDGMENT INTEREST
The defendant contends that the trial court erred in awarding prejudgment interest on future damages. We agree.
An award of prejudgment interest in state maritime cases is substantive in nature such that federal law controls. Mihalopoulos v. Westwind Africa Line, 511 So.2d 771, 781 (La.App. 5th Cir.1987); Morris v. Schlumberger, Ltd., 436 So.2d 1178, 1179 (La. App. 3d Cir.1983), writ denied, 441 So.2d 1221 (La.1983).
Under federal law, a plaintiff's entitlement to prejudgment interest in a maritime case depends upon the nature of his claim, particularly the basis from which the federal court derives its subject matter jurisdiction. Federal courts derive their maritime jurisdiction *97 from either the constitutional and statutory grant of such power, referred to as "admiralty jurisdiction," or from conventional sources such as diversity or federal question. SCHOENBAUM, supra § 3-2; David G. Douglas, THE CURRENT STATUS OF THE AVAILABILITY OF PREJUDGMENT INTEREST IN ADMIRALTY, 17 Tul.Mar.L.J. 283 notes 6-13 (1993).
If the court's jurisdiction is based solely upon conventional sources, such as federal question, the court applies federal law with respect to awarding interest. Since the statute governing the payment of interest in civil cases in federal courts, 28 U.S.C. § 1961, provides that interest shall be calculated from the date of entry of the judgment, prejudgment interest is generally prohibited in such maritime cases. Theriot v. J. Ray McDermott & Co., 742 F.2d 877, 883 (5th Cir.1984); Douglas, supra note 16 (1993). As such, the courts have consistently refused to grant prejudgment interest on awards recovered under the Jones Act.
Nonetheless, there is an exception to this general rule. Even if the court hears a suit based solely upon federal question, it can sit in "admiralty" if the case is tried before a judge and not a jury. Thus, when an action is based strictly upon the Jones Act, prejudgment interest may be recovered as long as the case is tried to the court and the court exercises its admiralty jurisdiction. Martin v. Walk, Haydel & Associates, Inc., 794 F.2d 209 (5th Cir.1986); Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 490-91 (5th Cir.1985). In the case at bar, the trial court, as the trier of fact, awarded prejudgment interest on the Jones Act award.
Likewise, where the court's power to hear a case arises from its admiralty jurisdiction, such as a general maritime action for unseaworthiness, the applicable substantive law is federal maritime law, which gives courts the discretion to award prejudgment interest. SCHOENBAUM, supra § 6-18; Douglas, supra notes 25-26.
In sum, federal courts have the discretion to award prejudgment interest on causes of action based upon their admiralty jurisdiction. However, courts have clearly chosen not to grant prejudgment interest on awards for future losses, including future earnings and future pain and suffering. Boyle v. Pool Offshore Company, 893 F.2d 713, 719 (5th Cir.1990); Martin, 794 F.2d at 212; Williams, 750 F.2d at 491. The rationale underlying this rule being that "recovery of interest on losses not yet incurred effectively grants the recipient double recovery." Martin, supra.
With these principles defined, it is clear that the trial court had discretion to grant Milstead prejudgment interest on the sums awarded as past damages in his general maritime and Jones Act claims. However, it had no authority to grant interest on the general maritime and Jones Act awards for future damages, be they future lost earnings or future pain and suffering, and the court of appeal erred in so finding.
The trial court did not apportion the sums awarded to the plaintiff. Thus, we remand this case to the trial court for a division of the judgment into past and future damages. In the trial court's discretion, prejudgment interest may be awarded only on past damages.

CONCLUSION
Standards of appellate review are procedural in nature. As such, they are not characteristic features of general maritime law, and application of Louisiana's state standards of appellate review would in no way interfere with the proper harmony and uniformity of general maritime law. Thus, we find that Louisiana courts of appeal should apply the state manifest error standard of review in maritime cases decided under the Jones Act and general maritime law.
Like federal courts, state courts hearing general maritime claims under the "saving to suitors" clause and Jones Act claims without a jury have the discretion to award prejudgment interest only on past damages.

DECREE
For the reasons set forth above, we remand this case to the trial court for recalculation of the damages in a manner not inconsistent with this opinion. In all other respects, the judgment of the court of appeal *98 in favor of the plaintiff, Edward D. Milstead, is affirmed.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
LEMMON, J., subscribes to the opinion and assigns additional opinion.
KIMBALL, J., concurs in part and dissents in part and assigns reasons.
KIMBALL, Justice, concurring in part, dissenting in part.
While I agree with the majority that there is no error in the trial court's decision on the merits of plaintiff's claim,[1] as well as its determination that the trial court erred in awarding prejudgment interest on future damages, I write separately to note my disagreement with the majority's conclusion that Louisiana standards of appellate review are applicable to maritime cases decided in Louisiana state courts under the "savings to suitors" clause.
In my view, the majority's reasoning in determining that appellate review standards are procedural in nature and, therefore, state appellate review standards should be applied in maritime cases brought in state courts under the "savings to suitors" clause is correct insofar as the other states of the United States are concerned. However, in Louisiana, unlike other states or federal courts, the scope of appellate review in civil cases extends to issues of both law and fact. See Art. 5, Secs. 5(C) and 10(B), Louisiana Constitution of 1974. This extension of the scope of appellate review in Louisiana's appellate courts allows an appellate court in Louisiana to that which a federal court cannot do, i.e., review fact determinations made by the trier of fact in plenary fashion.[2]
As the majority acknowledges, the key consideration in determining whether state laws apply in maritime "savings to suitors" cases is uniformity. In my view, the expansive review of fact determinations allowed under Louisiana standards of appellate review, but not available in a similar suit applying the same substantive law in a federal court, works a substantive change to a characteristic feature of general maritime law and is therefore not proper. I therefore respectfully dissent from the portion of the majority opinion which holds that Louisiana standards of appellate review apply in maritime cases brought in Louisiana state courts under the "savings to suitors" clause.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] Now collectively known as Diamond Offshore Drilling, Inc. Hereinafter referred to as "Diamond M."
[2] See, e.g., Comeaux v. Basin Marine, Inc., 93-1624, p. 5 (La.App. 1st Cir. 6/24/94), 640 So.2d 833, 836 (federal standard of review applicable in general maritime case); Feyerabend v. State, Department of Wildlife, 544 So.2d 577, 579 n. 2 (La.App. 1st Cir.1989) (state standard of review applicable in general maritime case); Naquin v. Travelers Insurance Co., 504 So.2d 1032, 1036 (La.App. 1st Cir.1987) (federal standard of review applicable in Jones Act case); Strawder v. Zapata Haynie Corporation, 94-453, 94-454, p. 3 (La.App. 3d Cir. 11/2/94), 649 So.2d 554, 558 (state standard of review applicable in Jones Act case); Alleman v. Brownie Drilling Co., 93-1668, p. 8 (La.App. 3d Cir. 11/23/94), 647 So.2d 371, 376 (federal standard of review applicable in Jones Act cases); Cormier v. Cliff's Drilling Company, 93-1260, p. 3 (La.App. 3d Cir. 5/4/94), 640 So.2d 552, 555 (state standard of review applicable in Jones Act and general maritime cases); Barks v. Magnolia Marine Transport Co., 617 So.2d 192, 194 (La.App. 3d Cir.1993) (federal standard of review applicable in Jones Act case); Smith v. Flotation Services, Inc., 596 So.2d 343, 347 (La.App. 3d Cir.1992) (federal law applicable in Jones Act and general maritime cases); Hanks v. Barge Transport Co., Inc., 563 So.2d 1297, 1300 (La.App. 3d Cir.1990) (state standard of review applicable in Jones Act and general maritime cases); Sanders v. Tidewater, Inc., 93-1181 (La.App. 4th Cir. 3/29/94), 635 So.2d 365, 367 (federal standard of review applicable in Jones Act case); Gaston v. G & D Marine Services, Inc., 93-0182 (La.App. 4th Cir. 1/19/94), 631 So.2d 547, 552 (federal standard of review applicable in general maritime case); Forrest v. Waterman S.S. Corp., 617 So.2d 59, 61 (La.App. 4th Cir. 1993) (federal standard of review applicable in general maritime case); Mistich v. Pipelines, Inc., 609 So.2d 921, 928-29 (La.App. 4th Cir. 1992) (federal standard of review applicable in Jones Act and general maritime cases); Smith v. Two "R" Drilling Co., Inc., 606 So.2d 804, 808 (La.App. 4th Cir.1992) (state standard of review applicable in general maritime case); Osorio v. Waterman S.S. Corp., 557 So.2d 999, 1003-04 (La.App. 4th Cir.1990) (federal standard of review applicable in Jones Act and general maritime cases); Huff v. Compass Navigation, Inc., 522 So.2d 641, 645 (La.App. 4th Cir.1988) (federal standard of review applicable in Jones Act and general maritime cases); Guillie v. Marine Towing, Inc., 95-355, p. 2 (La.App. 5th Cir. 2/14/96), 670 So.2d 1298 (federal standard of review applicable in Jones Act case); Miller v. International Diving and Consulting Services, Inc., 95-873, p. 8 (La.App. 5th Cir. 2/14/96), 669 So.2d 1246 (state standard of review applicable in general maritime case); Foster v. Destin Trading Corporation, 95-226, p. 4 (La.App. 5th Cir. 2/27/96), 670 So.2d 1342 (state standard of review applicable in Jones Act and general maritime cases); Olivier v. Best Workover, Inc., 94-994, p. 3 (La.App. 5th Cir. 1/30/96), 669 So.2d 476 (state standard of review applicable in general maritime cases); and Seymour v. CIGNA Ins. Co., 622 So.2d 839, 843 (La.App. 5th Cir.1993).
[3] The federal courts have exclusive admiralty jurisdiction over in rem proceedings. Additionally, Congress has given federal courts exclusive admiralty jurisdiction over suits under the Limitation of Shipowner's Liability Act, the Ship Mortgage Act, the Suits in Admiralty Act, and the Public Vessels Act, and for actions to foreclose preferred ship mortgages. SCHOENBAUM, supra § 4-2.
[4] This is referred to as the "reverse-Erie" doctrine.
[5] This is referred to as the "maritime but local" doctrine.
[1] My determination of the correctness of the trial court's decision is made under what I believe to be the appropriate standard of appellate review, i.e., federal principles of appellate review.
[2] While application of the manifestly erroneous/clearly wrong standard of appellate review for factual findings in Louisiana appellate courts ameliorates, at least to some degree, the differences in federal and Louisiana standards of appellate review of factual findings, Louisiana's standard for appellate review of factual findings nevertheless remains much more expansive in scope than that of the federal standards.