h KATZ, Judge.
STATEMENT OF THE CASE
Jerome Williams filed suit against Maritime Overseas Corporation for injuries received as a result of an accident while employed as a seaman on board the M/S OVERSEAS ARCTIC, a vessel owned by Maritime Overseas Corporation. The ensuing lawsuit was filed under the Jones Act and general maritime law of unseaworthiness of the vessel. At trial, the jury' *690 unanimously found for the plaintiff on the issues of the occurrence of an accident, negligence under the Jones Act, unseaworthiness, comparative negligence and medical causation.
Maritime Overseas Corporation, defendant, appellant, appeals the judgment dated July 1, 1998, awarding the plaintiff, Jerome Williams, two million dollars ($2,000,000.00) plus stipulated medical expenses in the sum of forty-eight thousand, five hundred sixty-six and 8jioo ($48,566.84). The judgment also awards the plaintiff interest from the date of judicial demand. From this verdict, the defendant, Maritime Overseas Corporation, appeals.
STATEMENT OF THE FACTS
Jerome Williams was employed as a permanent bosun on the OVERSEAS ARCTIC, a vessel owned by the defendant, Maritime Overseas Corporation, from | jJ-991 until his discharge on September 6, 1994. During Mr. Williams’ final voyage in 1994, he was in the process of disconnecting pipes, a service necessary in order for the ship to leave port. As Mr. Williams attempted to perform this task, the second pipe cracked and crude oil began to spout from the pipe. The nuts and bolts used to connect the pipe had fallen into a drip pan containing crude oil and chemical agents (benzene and styrene), agents that were used to dilute the crude oil. Mr. Williams placed his gloved hands into the drip pan in order to retrieve the nuts and bolts so as to reconnect the pipe and stop the flow of oil. The leak was terminated, and Mr. Williams cleaned up. Aaron Thibodeaux, another seaman, testified as a corroborating witness to this series of events, and to Mr. Williams’ subsequent complaints of discomfort.
When Mr. Williams reached port in Louisiana, he sought medical attention. As a result of these chemical burns, Mr. Williams developed keloid scars on his hands; these scars led to the ultimate demise of his marriage, to being declared permanently disabled by the Social Security Administration, and to becoming emotionally withdrawn and depressed. Mr. Williams received treatment from several physicians for his keloid scarring.
ASSIGNMENTS OF ERROR
Maritime Overseas Corp. specifies two errors on appeal for review: (1) the jury verdict in favor of the plaintiff Jerome Williams ignored the “competent medical evidence which definitely proved that the cause of plaintiffs disfiguring condition was not related to trauma,” and (2) the trial court erred in “awarding prejudgment interest from the date of judicial demand.”[1]
J^FIRST ASSIGNMENT OF ERROR
Whether or not there was competent medical evidence to prove that the cause of Jerome Williams’ disfiguring condition was related to the trauma, complained of and which resulted in his total disability.
The defendant contends that the plaintiff did not sustain keloid scarring of the hands as a result of contact with certain chemicals. Rather, the defendant argues that the plaintiff suffered a “systemic problem resulting from his longstanding and morbidly high cholesterol and triglyceride levels which caused Xanthomas.”[2]
*691 The plaintiff was examined by several doctors: Dr. Kweli Amusa; Dr. James He-neghan, Internist at Tulane University Medical Center; Dr. Fernando Palomaque, Dermatologist in Houma; Dr. John Koke-mor, Internist; Dr. Samuel Parry, Plastic Surgeon; Dr. Harold Stokes, Orthopedic Surgeon specializing in hand injury.
Additionally, two pathologists reviewed the various tissue from the plaintiffs hands and/or arms: Dr. Paul Riehl and Dr. Richard Reed — both doctors at Touro Infirmary.
Dr. Reed testified by deposition and was asked the question: “Based on what you saw in your examination, would you draw any relationship between the tissue samples that you saw and any sort of trauma?”
Dr. Reed responded: “No. I- can’t do that because essentially what I saw were manifestations of a metabolic disease. That.... this patient that doesn’t Dproperly handle lipids, and those lipids leak out of the blood into the tissue and form tumors.” Dr. Harold Stokes testified that after an examination and review of the record that it was his impression that the plaintiffs hand lesions were more likely xanthomas rather than keloids.
Dr. Kokemor testified that the condition of the plaintiffs hands “was consistent with his exposure to powerful chemicals.”
Dr. Riehl’s first report was dated March 2, 1998. The first report diagnosed the tissue sample of the plaintiff as “skin, left hand, arm, hypertrophic and keloid scars.”
The second tissue sample was collected on March 13, 1998 and was diagnosed as “skin, left arm, sclerosing xanthoma.”
On the other hand, Dr. Samuel Parry, issued a report in which he concluded that the “lesions excised from the left hand and arm are hypertrophic and keloidal scars.” Dr. Parry testified that the scarring on the plaintiffs hands appeared to be a result of chemical burns and diagnosed his condition as keloid vis-a-vis xanthamos.
Dr. Palomeque treated the plaintiff from May, 1995 until October, 1996, and testified by deposition that the lumps “looks like keloids and not xanthamos.”
Dr. Kokemor testified that the condition of the plaintiffs hands “was consistent with his exposure to powerful chemicals.”
Thus, it is clear that the jury accepted the diagnosis by Drs. Parry, Palomeque and Kokemor that the plaintiff Jerome Williams had suffered severe chemical burns resulting in keloidal scarring of his hands.
IsThe Supreme Court with Justice Victory as the organ in Milstead v. Diamond M. Offshore, Inc. 676 So.2d 89 (La.1996) at page 91 stated: “We granted certiorari in this maritime personal injury case to resolve a conflict among the circuits regarding the standard of appellate review to be applied when reviewing admiralty cases decided in state courts under the “Saving to Suitors” Clause and under the Jones Act, and to address the appropriateness of awarding prejudgment interest on future damages. We find that the federal principles of appellate review are not binding upon our state courts in the exercise of concurrent maritime jurisdiction, and that Louisiana’s manifest error standard of review controls. We further find that federal law clearly precludes the award of prejudgment interest on future damages, including future lost earnings and future pain and suffering.”
Accordingly, the Court finds that the jury did not commit manifest error in accepting the testimony of Drs. Kokemor, Palomeque, and Parry as opposed to the other doctors who testified to the contrary.
Accordingly, the Court finds that this assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR
Maritime Overseas Corp. contends that the trial judge erred in awarding prejudgment interest.
After reviewing the record and evidence, the court finds that the interrogatories *692 submitted to the jury did not distinguish between future damages and past damages. Moreover, this Court is not in a position to second guess the jury and apportion the two million dollars ($2,000,-000.00) vis-a-vis past damages and future damages. Hence, under the Milstead decision by the Supreme Court the 1 ^plaintiff is not entitled to prejudgment interest. Thus, the trial court erred in awarding the plaintiff Williams prejudgment interest.
Consequently, we amend the judgment of the trial court dated July 1, 1998, to reflect that interest shall run from the date of judgment, i.e. July 1, 1998 until paid.
AFFIRMED IN PART; AMENDED IN PART.
BAGNERIS, J. CONCURS IN PART; DISSENTS IN PART.

. Under issues presented for review, the defendant/appellant broadened the inquiry for appeal by stating that the issue was whether or not "the jury’s verdict (was) clearly wrong?"
During oral argument, counsel for Maritime Overseas Corporation admitted that it was no longer contesting the occurrence of the trauma but only the issue of whether there was medical evidence that connected the plaintiff's keloidal scarring of the hands with the trauma resulting in Mr. Williams being totally unable to return to work.

. Transcript, Vol. II, pages 43-46, explain that a Xanthoma is an accumulation of blood fats or lipids which presents as lumps or other lesions on the knuckles, wrists, elbows and knees in individuals who suffer from hy-perlipidema (excessive blood fat). These lumps may also appear on the palms of the hands as a heavy callus-like formation.