# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 06-197

**TRENT DAVIS**

**VERSUS**

**ENSCO OFFSHORE COMPANY**

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-3678
HONORABLE GLENNON P. EVERETT, DISTRICT COURT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

**Guy O. Mitchell**
**Mitchell Law Offices**
**225 Court Street**
**Ville Platte, Louisiana 70586-4492**
**(337) 363-0400**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Trent Davis**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**Post Office Box 3448**
**Lafayette, Louisiana 70502**
**(337) 266-2200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **ENSCO Offshore Company**

**GENOVESE, Judge.**

In this Jones Act and general maritime case brought in state court, Plaintiff, Trent Davis (Davis), appeals the jury verdict in favor of the Defendant, ENSCO Offshore Company (ENSCO), wherein the jury found that Plaintiff had not sustained an accident.

At the conclusion of the trial, the trial court dismissed Davis' unseaworthiness claim by granting ENSCO's motion for involuntary dismissal.[1]  Davis appeals the jury's finding that he did not sustain an accident, as he has alleged, while working aboard ENSCO's offshore drilling vessel.  For the following reasons, we find no manifest error and affirm the jury's verdict.

## FACTUAL AND PROCEDURAL HISTORY

Davis was employed by ENSCO as a roustabout aboard an offshore jack-up drilling rig, ENSCO Rig 95 (Rig 95), operating in the Gulf of Mexico.  Davis asserts that on December 19, 2003, after completing a painting job atop a storage shed, he fell 8 to 10 feet while descending a ladder, injuring his left knee and lower back.  On July 28, 2004, Davis filed suit against ENSCO under the Jones Act and general maritime law contending that ENSCO violated certain safety policies.

A jury trial was held from June 20 through June 23, 2005.  At the conclusion of the trial, Davis' unseaworthiness claim was dismissed by the trial court pursuant to ENSCO's motion for involuntary dismissal.  The jury returned a verdict denying Davis' claims against ENSCO, finding that Davis did not prove by a preponderance of the evidence that he had sustained an accident aboard Rig 95.  The trial court adopted the jury's verdict as its judgment.  On July 18, 2005, the trial court denied

---

[1]The trial court's dismissal of Davis' unseaworthiness claim has not been appealed and will not be addressed.

1

Davis' motion for judgment notwithstanding the verdict and, in the alternative, motion for new trial. Davis appealed.

## ASSIGNMENTS OF ERROR

In his two assignments of error, Davis asserts that the jury erred in (1) failing to accept as true the uncontradicted testimony of his witnesses; and (2) failing to find that an accident occurred on Rig 95.

## LAW AND DISCUSSION

In *Coutee v. Global Marine Drilling Co.*, 05-756, pp. 5-6 (La. 2/22/06), 924 So.2d 112, 116, the supreme court stated:

> Louisiana courts of appeal apply the manifest error standard of review in general maritime and Jones Act cases. *Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So.2d 89, 96. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Smith v. Louisiana Dept. of Corrections,* 93-1305 (La. 2/28/94), 633 So.2d 129, 132; *Stobart v. State through DOTD,* 617 So.2d 880, 882 (La.1993); *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart, supra; Rosell, supra.* The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 01-2217 (La. 4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

After a thorough review of the record, though there are two permissible views of the evidence, we cannot say that the jury was manifestly erroneous or clearly wrong in finding that Davis did not sustain an accident on Rig 95. Davis contends that the jury erred by failing to accept his testimony as true, considering the fact that ENSCO did not present contradictory evidence. We disagree. We find that the

2

record is replete with not only Davis' inconsistencies, but also ample contradictory testimony presented by ENSCO to support the jury's verdict.

In his testimony, Davis stated that he began his work shift on December 19, 2003, with a safety meeting around 6:00 p.m. Davis testified that, at the time of the accident, Rig 95 was anchored "in place" and not being towed. He testified that the accident occurred approximately 2 hours after he started his shift and that "it was still kind of daylight and it was starting to get dark." Davis stated that when the accident occurred, he and co-worker Regis Powers (Powers) were painting the deck, and Powers had placed a ladder against a metal shed in order to paint its roof. The metal shed covered stairs leading down to the tank room. Davis testified that Powers started painting the roof of the metal shed, but did not finish. According to Davis, he climbed the ladder to the roof of the metal shed; he was assisted by Powers at least once to put more paint onto his roller; and, he was finished painting the shed's roof. Davis described the accident stating "I put my foot on the second rung and that's when the ladder slipped from underneath me and I fell." Davis described the way he fell as:

> I was kind of falling backwards but I caught myself and, uh, I landed on -- like on my feet but it was on the front, like the boots, kind of, the shoes, like almost on my tippy-toes, so-call it. But I fell like in a squatted position and my left knee had hit the deck and then my hand. And then some kind of way I twist myself and I fell backwards.

Davis testified that he did have the paint roller in his hand when he fell. According to Davis, his accident occurred on December 19, 2003 and ENSCO officials waited 2 days before transporting him onshore to have him evaluated by a doctor.

ENSCO introduced a "Certification of No Injury" into evidence dated December 19, 2003. Davis' signature appears on said document certifying that he did

3

not have "any injury of any kind during this tour of duty." ENSCO submitted an "Employee Injury or Illness Report" dated December 21, 2003, containing Davis' signature and description of how the accident occurred. Davis reported:

> While standing on the port side cover with nothing to tie off to working, painting the top. I was coming down the latter [sic] as soon as I put my foot on the latter [sic] 2 rung. The latter [sic] slide from the bottom and I feel [sic] forward hitting my left nee [sic].

On said report, the date of the injury is listed as 12:20 a.m., Sunday, December 21, 2003. ENSCO also submitted the Acadian Ambulance medical report, prepared by its medic aboard Rig 95, corroborating that Davis reportedly fell around 12:20 a.m. on December 21, 2003, and was transported off the rig around 9:30 a.m. A receipt from the Comfort Inn in Lafayette, Louisiana indicates that Davis was checked-in to the hotel on December 21, 2003, and checked-out on December 22, 2003.

Dr. Gregory Gidman, an orthopedist, testified that he examined Davis at 9:55 a.m. on December 22, 2003. According to Dr. Gidman, Davis complained about his neck, left knee, and left hand. Dr. Gidman observed no scratches or abrasions to any of these areas, and an x-ray of Davis' hand showed no injury. At no time did Davis mention pain in his back to Dr. Gidman.

Powers was also a roustabout for ENSCO at the time of the accident. On the date of the trial, Powers was employed by ENSCO as a roughneck. Powers testified that on the night of Davis' alleged accident, Rig 95 was "on a tow and a tow line had broke and we was going to replace it." Powers testified that a little after midnight he heard the sound of a ladder hitting the ground and then Davis hollering. Immediately before that he had been helping co-worker Kevin Callery (Callery) with a paint gun for a couple of minutes only 50 feet from Davis. Prior to that, Powers was at the front of the rig for about 30 minutes helping to change its tow line. Contrary to Davis'

4

testimony, Powers denied having propped the ladder against the metal shed and having climbed the ladder to paint. Powers testified that Davis was complaining that he injured his right knee and that he did not see any paint splattered around the scene of the accident. Powers testified that he observed Davis talking on the telephone a lot during his off hours and that Davis mentioned to him that "he wasn't going to be out there much longer," but Davis did not elaborate if he was being transferred or if he was planning to quit.

Callery was also employed by ENSCO as a roustabout on the date of the alleged accident; however, on the date of the trial, Callery no longer worked for ENSCO. In his testimony, Callery recalled that when Davis' accident occurred "it was midnight, it was dark." Callery testified that Davis reported to him immediately after he fell, that he only fell about 2 or 3 feet, that he slipped off of the ladder rather than the ladder slipping out from underneath him, and that he injured his right knee. Callery testified that he did not see any paint splattered around the accident scene.

T. K. Thornton, Jr. (Thornton) was an offshore paramedic for Acadian Ambulance aboard Rig 95 on the date of the alleged accident. Thornton testified via deposition that he arrived to examine Davis and administer medical care to him immediately after the alleged accident. According to Thornton, he found Davis lying face down on the deck, and Davis immediately complained that he hurt his right knee. Thornton testified that when he examined Davis he "did not find any deformities, contusions, abrasions, punctures, tenderness, lacerations, or swelling." Thornton saw no apparent injury to either Davis' right or left knee. According to Thornton, Davis told him that he had fallen 8 to 10 feet straight down, face down, and that his knees bore the brunt of his fall onto the metal deck. After escorting Davis to the crew bunk

5

room, Davis told Thornton that his pain was in his left knee. Thornton testified that he observed no signs of injury to Davis' left knee.

James Higdon, ENSCO's toolpusher on the date of the alleged accident, investigated the accident scene and assisted with Davis' completion of the "Employee Injury or Illness Report." According to said report, Davis asserted that he started to descend the ladder with the roller brush in his hand, and when he stepped onto the second ladder rung from the top, the ladder skidded out from underneath him causing him to fall 8 to 10 feet onto the metal deck of the rig.

Brad Bruce, ENSCO's deck foreman on the date of the alleged accident, testified that, immediately after the alleged accident, he observed that Davis' hard hat was laying beside him, that there was no paint splatter near the accident scene, and that there were no marks or evidence on the wall or near the wall to indicate that the ladder slid and fell as described.

Contrary to Davis' assertions, we find that there are clear contradictions in the record to support the jury's finding that Davis was not credible. Davis' recollection of when the accident occurred was not supported by the testimony or the documents in evidence. Davis initially stated that his right knee was injured. Shortly thereafter, Davis changed his claim and stated that he injured his left knee. Davis' description(s) of how he fell are not consistent. On the date of the accident, he reported that he fell forward onto his knees. On the date of trial, he testified that he landed in a squatted position and landed on his "tippy-toes" injuring his left knee, and then twisted in a manner that caused him to fall backwards and also injure his back.

The evidence in the record supports the jury's verdict that there was no accident. Considering the insufficiency of proof, and the inconsistent and

6

contradictory testimony presented by Davis, we find that a reasonable factual basis exists for the jury's finding that the was no accident. We further recognize that the trier of fact is in the best position to assess the demeanor and judge the credibility of witnesses when there is conflicting testimony. *Robin v. Allstate Ins. Co.*, 03-1009, 03-926 (La.App. 3 Cir. 3/24/04), 870 So.2d 402, *writ denied*, 04-1383 (La. 9/24/04), 882 So.2d 1143 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). Therefore, we do not find that the jury was manifestly erroneous or clearly wrong in its finding that Davis failed to meet his requisite burden of proof that an accident had occurred aboard ENSCO's offshore drilling vessel. Accordingly, we affirm the jury's verdict.

## DECREE

For the foregoing reasons, the judgment is affirmed. All costs of this appeal are assessed to Plaintiff/Appellant, Trent Davis.

**AFFIRMED.**