h CARAWAY, J.
In this maritime action, the accident occurred when a drilling rig worker was injured while leaving a crewboat which transported him to the rig. After settling the plaintiffs maritime and Jones Act claims, the Jones Act employer and the crewboat owner tried this action in state court to determine the apportionment of fault between them. Finding that the trial court applied an inappropriate standard of care in measuring the action of the captain of the crewboat, we reverse the trial court’s apportionment of fault and find the Jones Act employer totally responsible for the accident.

Facts

Plaintiff, John Parker (“Parker”), filed this suit for damages under 46 U.S.C.App. § 688, commonly referred to as the Jones Act, and general maritime law. Parker was employed by Southwestern Offshore Corporation (“Southwestern”) as a driller. Parker was permanently assigned to a self elevating drilling platform. The platform qualifies as a véssel within the meaning and intendment of the Jones Act. Being permanently assigned to a vessel as a member of its crew, Parker was a Jones Act seaman and Southwestern was his Jones Act employer.
Southwestern had contracted with Offshore Turnkey Ventures, Inc. (“OTV”) to drill a well approximately 89 miles off the coast of Louisiana on the Outer Continental Shelf. OTV contracted with Boat Services of Galveston, Inc. (“Boat Services”) to provide transportation services for the crew to and from the platform by boat. On December 18, 1996, the date of Parker’s injury, the WV Big Thunder (“Big Thunder”), a 100-foot crewboat with a gross tonnage of 99 tons supplied by Boat Services, was scheduled to transport an entire complement of Southwestern employees to the drilling vessel to relieve the crew on duty.
| pThe captain of the Big Thunder, Frank Loeffler, had some concerns with making the trip to the rig because of increasing wind conditions. However, he informed the dispatcher that he would make the decision whether to continue the trip to the platform after observing the open sea conditions. Upon reaching deep water, Captain Loeffler determined that the trip to the rig could be safely made. At the drilling rig, Captain Loeffler estimated the sea conditions to be 6 feet on average with *641 an occasional 4-foot and 8-foot wave. The wave period, the time between the crest of each wave, was 5 to 7 seconds with a wave length of approximately 70 feet. The winds and seas were both out of the north with a fairly mild current and winds of 20 to 25 mph.
Parker was seriously injured as he exited Big Thunder to board the drilling platform. The process was conducted by use of a crane which lowered a collapsible mesh basket to the center of the deck at the stern of the Big Thunder. The crane and the handling of the personnel basket on the deck were under the control of Southwestern employees. The crane operator, Glen Nutter, had previously exited Big Thunder without incident and had relieved the prior operator on the rig at the time of the accident. Parker was injured as the basket first was raised and began to slide outward away from the rig across the 22-foot wide deck slamming the basket into the ship’s guard rail.
Captain Loeffler’s role in the maneuver was to keep the vessel in position beside the rig and beneath the boom of the crane. His positioning of the Big Thunder with its stern to the waves at the time of the accident was accepted by the trial court in its determination of facts. Southwestern’s and Nutter’s view that the boat was positioned broadside into the waves and north wind was therefore rejected by the court.
Un its reasons for judgment, the trial court ruled:
It is the Court’s conclusion that the positioning of the vessel as depicted by the witnesses for the defendant, Southwestern Offshore Corporation, would be extremely difficult to maintain under the prevailing conditions. Considering the testimony of the witnesses on each side, the Court finds that the testimony of the witnesses for the defendant, Boat Services of Galveston, Inc.,.is more credible regarding the positioning of the vessel and other factors at issue such as sea conditions, etc. The court is impressed that the Captain of a vessel has a strong duty to protect its passengers, and the Captain of the vessel should have been more stringent in allowing the transfer to take place under the prevailing conditions. Accordingly, the Court allocates 65% of the fault in this matter to Southwestern Offshore Corporation and 35% to Boat Services of Galveston, Inc.
Both parties now bring this appeal, contesting the court’s allocation of fault-.

Discussion

Pursuant to the “saving to suitors” clause of 28 U.S.C. § 1333(1), which permits state courts to have concurrent jurisdiction with the federal district courts, a seaman can elect to file his Jones Act claim in any court that has jurisdiction over the parties, including a state court. Foster v. Destin Trading Corp., 96-0803 (La.5/30/97), 700 So.2d 199; Green v. Industrial Helicopters, Inc., 593 So.2d 634 (La.1992), reh’g denied, cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).
Any alleged breach of duty to a passenger on a vessel is a maritime tort and the substantive law applicable is the general maritime law of the United States. Kermarec v. Compagnie Generate Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318 (11th Cir.1989). Although courts are free to apply their own rules and procedures, they must nevertheless apply maritime substantive law, even when the claim is filed in a state court. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922); Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 94; Green, supra.
| ¿Louisiana courts of appeal apply the manifest error standard of review in general maritime and Jones Act cases. Milstead, supra; Gaston v. G & D Marine Services, Inc., 93-0182 (La.App. 4th Cir. 1/19/94), 631 So.2d 547, 552; Day v. Touch- *642 ard, Inc., 97-1180 (La.App. 5th Cir. 5/27/98), 712 So.2d 1072.
While factual determinations by the trier of fact are given great deference on appeal, if the trial court’s decision was based on an erroneous application of law rather than a valid exercise of discretion, the trial court’s decision is not entitled to the deference it would otherwise enjoy. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); We Sell Used Cars, Inc. v. United Nat’l Ins. Co., 30,671 (La.App.2d Cir.6/24/98), 715 So.2d 656.
The primary factual disputes in this case concern the condition of the seas and Loeffler’s positioning of the Big Thunder at the time of the accident. The trial court accepted Boat Services’ witnesses who described the seas as averaging 6 feet with long wave lengths or swells. These factual findings by the trial court are corroborated by evidence of the sea conditions recorded by the National Weather Service on buoys further out than the platform and the data as to wind speed and sea height recorded by Southwestern at the rig. We also find that the numerous other personnel transfers accomplished that morning without serious incident or accident bolster the determination that the sea conditions were not unreasonably dangerous. See, Tarlton v. Exxon, 688 F.2d 973, 976-977 (5th Cir.1982) (where the court observed that six feet sea conditions were “not necessarily dangerous for loading or unloading. Such activity is not at all unusual, at the myriad offshore platforms in the gulf.”)
Secondly, we find most significant that from the questioning of the crane operator, Nutter, the issue of the sea conditions was downplayed in relation to the more critical issue of the boat’s positioning. Nutter agreed that if Loeffler had | (¡positioned the boat with the stern to the seas and kept that boat in.position as Parker’s lift began, Nutter would not have had “any trouble getting the basket off that boat.” With the trial court’s acceptance of Loeffler’s testimony that he did in fact position the boat with the stern to the seas, the only remaining cause for the accident would be Nutter’s decision to commence the lift when the tip of the boom and 750-pound headache ball were not directly centered above the personnel basket. Such a lift would create the swinging action of the basket as it initially left the deck. At that moment in the operation, Nutter and the other Southwestern employees on the deck had control. The tip of the boom, which Loeffler could not see inside the crew-boat’s control room, was required to be maneuvered by Nutter up, down and sideways to keep up with the ongoing movement of the crewboat and to maintain the proper angle for the lift. The Southwestern employees on the deck of the Big Thunder communicated with Nutter through hand signals. As Parker and three other Southwestern employees boarded the basket, the decision to either make the lift or to abort by releasing the basket from the crane line was the product of the choices of Southwestern’s crew. We also find it significant that as the basket was lifted and instantly swung toward the railing, Nutter failed to observe that two of the men in the basket jumped or fell from the basket back to the boat deck.
Given this record, we therefore agree with the trial court that both the sea conditions and the positioning of the boat were in accordance with the testimony of Captain Loeffler and the other Boat Services’ witnesses. Nevertheless, despite these conclusions, the trial court went on to impose a portion of the liability upon Boat Services finding that the captain of a vessel has a “strong duty to protect its passengers” and that Captain Loeffler “should have been more stringent in allowing the transfer to take place under the prevailing conditions.”
[fiWhether a duty is owed is a question of law. Berry v. State Through Dept. Of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412; Nesbitt v. Dunn, 28,240 (La.App.2d Cir.4/3/96), 672 So.2d 226. Thus, we will review de novo the question of whether Boat Services owed a “strong” or “more stringent” duty to its passengers. Wall v. Progres *643 sive Barge Line, Inc., 97-0665 (La.App. 4th Cir. 10/29/97), 703 So.2d 681, writ denied, 98-0280 (La.3/20/98), 715 So.2d 1220.
Under general maritime law, it is well settled that the duty owed by a vessel owner to a passenger is reasonable care under the circumstances. Kermarec, supra; Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312 (5th Cir.1990), cert. denied, 499 U.S. 906, 111 S.Ct. 1107, 113 L.Ed.2d 216, (1991); Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4th Cir.1991), writ denied, 592 So.2d 414 (La.1992). The mere fact that an accident happened, without more, is insufficient to establish an actionable negligence claim under general maritime law against a vessel owner. Kermarec, supra; Counts v. Lafayette Crewboats, Inc., 622 F.Supp. 299 (W.D.La.1983); Riley v. Louisiana I-Gaming, 98-1106 (La.App. 5th Cir. 3/10/99), 732 So.2d 541, writ denied, (La.5/28/99), 743 So.2d 674.
Despite this standard of care, Southwestern argued to the trial court and this court that the more stringent duty of a common carrier applies to Boat Services. The duty owed by a common carrier in Louisiana to its passengers is stringent, whether it be termed the highest standard of care,[1] highest degree of vigilance, care and precaution for the safety of those it undertakes to transport,[2] or the strictest diligence.[3] Nevertheless, from our review of the above cited federal rulings, we reject Southwestern’s assertion that these state law principles for common carriers have application under this general maritime setting.
l7In this case, Boat Services specifically contracted with OTV to provide transportation services for Southwestern’s drilling crew. As discussed above, the operation for the loading and unloading of the drill crews was performed with Southwestern’s equipment and personnel. Boat Services, tóle vessel owner, owed its passengers only a duty of reasonable care under the circumstances, not a more stringent duty pursuant to land-based “common carrier” concepts which the trial court appears to have applied. Given the trial court’s findings of fact that the sea conditions were not unreasonably dangerous and that the crewboat was properly positioned for the offloading of passengers, we find that Boat Services fulfilled its duty of reasonable care under the circumstances.
In contrast to the duty owed by vessel owners to passengers, a Jones Act employer’s potential liability in a negligence action brought by a seaman extends to all personal injuries arising during the ' course of the seaman’s employment. Foster, supra. Such negligence may arise in many ways, including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. Id.
A fundamental non-delegatable duty of a Jones Act employer is to supply a reasonably safe ingress and egress for its crew members to and from its vessel. Massey v. Williams-McWilliams, Inc., 414 F.2d 675 (5th Cir.1969); see also, Hopson v. Texaco, 383 U.S. 262, 2631 86 S.Ct. 765, 15 L.Ed.2d 740 (1966) (holding Jones Act employer responsible for injuries a crew member sustained as a consequence of a cab driver’s negligence while transporting sick seaman from ship); Mounteer v. Marine Transport Lines, Inc., 463 F.Supp. 715 (S.D.N.Y.1979) (Jones Act employer responsible for cab driver’s negligence while transporting seamen to ship). We conclude, as the court in Massey, in similarly reviewing an accident |Rinvolying the delivery of a seaman to the employer’s vessel, that this fundamental duty of the Jones Act employer may not be “palmed off onto the crewboat.” Massey at 679. Accordingly, Parker’s Jones Act employer, *644 Southwestern, is responsible for the injuries he sustained while boarding the platform, his work vessel.

Conclusion

Under the conditions determined by us and the trial court to have existed on December 18, 1996, we find that Boat Services and Captain Loeffler did nothing wrong, improper or unsafe. The trial court’s choice of the applicable standard of care was error. Boat Services accomplished its mission of delivering the Southwestern crew safely out to the drilling platform and positioning the crewboat so that Southwestern, using its equipment and employees, could offload the personnel. Finding no negligence on the part of Boat Services, we hold that the trial court incorrectly assigned 35% of the fault for Parker’s accident to Boat Services and that Southwestern, Parker’s Jones Act employer, must bear 100% of the liability. Costs of this appeal are assessed to Southwestern.
REVERSED AND RENDERED.

. King v. King, 253 La. 270, 278, 217 So.2d 395, 398 (1968).

. Wise v. Prescott, 244 La. 157, 165-166, 151 So.2d 356, 359 (1963); quoting Wise v. Prescott, 142 So.2d 613, 620 (La.App. 4th Cir.1962).

.Hopkins v. New Orleans Ry. & Light Co., 150 La. 61, 72, 90 So. 512, 516 (1922).