MADELEINE M. LANDRIEU, Judge.
LThe plaintiff, Boris Radan, appeals the trial court’s granting of summary judgment dismissing his case against defendant Port Ship Service, Inc. (“Port Ship”). For the reasons that follow, we affirm the trial court’s judgment.
FACTS AND PROCEEDINGS BELOW
Mr. Radan, a Croatian seaman who serving as Chief Engineer aboard a cargo ship, the M/V Stolt Pride, injured himself when he fell eight or more feet from a pilot’s ladder while attempting to disembark from the Stolt Pride onto the deck of a crewboat, the Little Ray, which was going to transport him to shore. When *894 the accident occurred,[1] the Stolt Pride was moored to the Kinder Morgan/Delta Terminal facility on the Mississippi River in Harvey, Louisiana. However, foreign crewmen were not allowed to exit vessels on the shore side by means of the gangplank because their travel through U.S. terminals was considered a national security risk. Hence, the Stolt Pride hired a water taxi, the Little Ray, and provided a pilot’s ladder[2] for Mr. Radan’s use in making the approximately thirty-foot descent from the Stolt Pride to the Little Ray.
| ^Following the accident, Mr. Radan filed suit against his employer, Stolt-Nielsen;[3] the owner/operators of the terminal facility, Kinder-Morgan;[4] and the owner/operator of the Little Ray, Port Ship Service, Inc. (hereinafter referred to as “Port Ship”). Mr. Radan settled with Stolt-Nielsen and Kinder Morgan.
The remaining defendant, Port Ship, brought a motion for summary judgment asserting that it did not owe any applicable duty of care to Mr. Radan because the owner/operator of the Stolt Pride had the sole, non-delegable duty to ensure the safety of its crewmember in disembarking its ship. Alternatively, Port Ship argued that assuming it did owe a duty to Mr. Radan that it breached, the breach of this duty did not cause Mr. Radan’s accident. The matter was heard by the trial court on February 7, 2013. On February 21, 2013, the trial court issued a written judgment granting Port Ship’s motion for summary judgment and dismissing all the plaintiffs claims against it.[5] In reasons included in the body of the judgment, the trial court found that Port Ship “had no duty to this seaman, Mr. Radan, for ingress and egress and thus cannot be held at fault.” The trial court further noted that Mr. Radan’s deposition testimony established that his fall had occurred as a result of his foot slipping off the ladder, and not as a result of any wrongdoing by Port Ship.
Mr. Radan now appeals this judgment.
|,ST AND ARP OF REVIEW/ APPLICABLE LAW
We review the granting of summary judgment de novo, applying the same standards used by the trial court. Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230. Thus, the motion will be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
Although Mr. Radan, a Jones Act seaman, has elected to file his negligence suit in state court pursuant to the “saving to suitors” clause,[6] the substantive law ap *895 plicable to his claims is the General Maritime Law. Milstead v. Diamond M Offshore, Inc., 95-2446, p. 7 (La.7/2/96), 676 So.2d 89, 94.[7] State courts hearing maritime claims are free to apply their own rules and procedures, but they must apply maritime substantive law. See Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).
To establish negligence against a non-employer shipowner under the General Maritime Law, the plaintiff/ seaman must demonstrate that there was a duty owed to him by the defendant, a breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant’s conduct and the plaintiffs injury. In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir.1991). | ¿Furthermore, the resultant harm must be reasonably foreseeable. Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir.1980).
ISSUES
On appeal, Mr. Radan argues that the trial court erred by: (1) finding that Port Ship owed no duty to him; and (2) improperly weighing disputed facts on summary judgment.
DISCUSSION
I. Whether Port Ship Owed a Duty to Mr. Radan
The trial court concluded that Port Ship had no duty to Mr. Radan based upon the long line of maritime jurisprudence holding that a shipowner/ Jones Act employer has a fundamental, non-delegable duty to provide its crew members with a reasonably safe means of ingress and egress from its vessels. See Massey v. Williams-McWilliams, Inc., 414 F.2d 675, 679 (5th Cir.1969) and cases cited therein. The Louisiana Second Circuit Court of Appeal explained the scope of this duty in a case involving a worker on an oil rig[8] who was injured while attempting to transfer from a crewboat to the rig:
A fundamental non-delegatable [sic] duty of a Jones Act employer is to supply a reasonably safe ingress and egress for its crew members to and from its vessel. Massey v. Williams-McWil-liams, Inc., 414 F.2d 675 (5th Cir.1969); see also, Hopson v. Texaco, 383 U.S. 262, 263, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966) (holding Jones Act employer responsible for injuries a crew member sustained as a consequence of a cab driver’s negligence while transporting sick seaman from ship); Mounteer v. Marine Transport Lines, Inc., 463 F.Supp. 715 (S.D.N.Y.1979) (Jones Act employer responsible for cab driver’s negligence while transporting seamen to ship). We conclude, as the court in Massey, in similarly reviewing an accident involving the delivery of a seaman to the employer’s vessel, that this fundamental duty of the Jones Act employer may not be “palmed off onto the crew-boat.” Massey at 679.
Darker v. Sw. Offshore Corp., 32,606 (La. App. 2 Cir. 12/15/99), 763 So.2d 638, 643. In Parker, the appellate court reversed the trial court’s allocation of 35% liability to the crewboat owner and placed all the liability on the rig owner. The court ac *896 knowledged that the crewboat operator had a duty of reasonable care, but found that it had fulfilled that duty because the sea conditions were not unreasonably dangerous and the crewboat was properly positioned for the offloading of passengers. Id. at 643.
Similarly, in the case before us, Mr. Radan argues that summary judgment was improper because Port Ship owed a duty of reasonable care to its passengers, and a genuine issue of fact exists with regard to whether that duty was breached. We disagree. Mr. Radan was not a passenger aboard the crewboat when the accident occurred, and there is nothing in the record suggesting that the operator of the Little Ray was negligent in caring for Mr. Radan after he fell from the ladder on to the deck of the crew boat. The plaintiff cites no authority for the proposition that the crewboat operator’s duty of reasonable care extended to assisting Mr. Radan in his safe egress from his employer’s vessel. As noted above, the only jurisprudence cited indicates that the duty of a crew boat operator when a seaman is disembarking from a larger ship to the crewboat (or vice versa) is to properly position the crewboat and to make sure the sea conditions are not unreasonably dangerous for the transfer. The plaintiffs argument that the Port Ship had a duty to assist in the transfer by providing more lighting and/or a deckhand fails because the plaintiff cites no legal authority to support the existence of such a duty under the General Maritime Law. We therefore conclude that the trial court did not errj^by granting summary judgment on the basis of the absence of a duty on the part of Port Ship.
II. Weighing of disputed facts on summary judgment
The plaintiff argues that the trial court improperly weighed disputed facts when it stated in the judgment that Mr. Radan’s fall was caused by his foot slipping off the pilot ladder as he descended. The plaintiff argues that he submitted evidence showing inadequate lighting on the Little Ray and/or the lack of a deckhand aboard the crewboat to assist in the transfer, which evidence creates a genuine issue of material fact. We disagree. There is no genuine issue of material fact created in the absence of any evidence that either of these conditions caused the accident. Moreover, as the trial court noted, these conditions cannot be the basis of Port Ship’s fault because they pertain to the ingress and egress from the Stolt Pride, which is solely the duty of the shipowner.
Moreover, the trial court based its finding of causation upon Mr. Radan’s own deposition testimony. In his deposition, Mr. Radan recounted that while coming down the ladder, he stuck his right foot out to protect himself in case part of the Little Ray came up in the swell of waves and hit him; at the same time, he turned his head and looked over his right shoulder, and saw that the Little Ray “was not close.” Mr. Radan further testified that at that moment, his “left foot slipped.” When asked why he slipped, Mr. Radan said: “My left foot slipped because it was’ a rainy day, right? Everything was wet, okay?” He further testified that had his left foot not slipped, he would have put his right foot back on the ladder and continued going down. He agreed that if his left foot had not slipped, the accident would not have occurred.
|7Mr. Radan’s deposition testimony was undisputed. The only eyewitness to the accident was the captain of the Little Ray, Captain Wigginton. Captain Wigginton testified in his deposition that he did not see Mr. Radan’s foot slip, and did not know whether or not that had occurred. In finding that Mr. Radan had slipped off *897 the ladder, the trial court did not improperly weigh the evidence because the only evidence submitted on this issue was Mr. Radan’s deposition testimony. We therefore do not agree that the trial court improperly weighed disputed facts on summary judgment.
Reviewing the entire record, we conclude that the summary judgment was properly granted.
CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.

. The accident occurred on November 28, 2008.

. A pilot’s ladder is essentially a rope ladder with rungs that allows a crew member to disembark a ship onto a crewboat or launch boat situated alongside the ship.

. The petition names and alleges as the plaintiff's employer four separate "Stolt-Nielsen” entities, collectively referred to herein as "Stolt-Nielsen.”

. The petition names as defendants three separate "Kinder Morgan” entities, collectively referred to herein as "Kinder Morgan.”

. The February 21, 2013 judgment is tided "Amended Judgment” and reflects that it corrects a "typographical error” in the original judgment issued February 15, 2013.

. 28 U.S.C. § 1333(1) bestows original jurisdiction of maritime cases upon the federal district courts "saving to suitors in all cases all other remedies to which they are otherwise *895 entitled." The emphasized language, commonly referred to as the "saving to suitors” clause, has been interpreted as giving states the concurrent power to hear in personam admiralty cases. Milstead v. Diamond M Offshore, Inc., 95-2446, p. 7 (La.7/2/96), 676 So.2d 89, 93.

. For purposes of this opinion, "General Maritime Law” refers to the substantive federal maritime law, both statutory and jurisprudential.

. In this case the oil rig was considered a vessel pursuant to the General Maritime Law.