772 So.2d 148 (2000)
Jimmy Shay RICHARD
v.
MIKE HOOKS, INC.
Jimmy Shay Richard
v.
Mike Hooks, Inc.
Jimmy Shay Richard
v.
Bucyrus-Erie Company, Inc. et al.
Nos. 99-1631, 99-1632 and 99-1633.
Court of Appeal of Louisiana, Third Circuit.
October 4, 2000.
Rehearing Denied December 13, 2000.
*149 Steven Broussard, Steven Broussard & Associates, Lake Charles, LA, Counsel for Plaintiff/Appellee.
James B. Doyle, Woodley, Williams, Boudreau, Norman, Brown & Doyle, L.L.C., Lake Charles, LA, Counsel for Defendant/Appellant-Mike Hooks, Inc.
John A. Jeansonne, Jr., Jeansonne & Remondet, L.L.C., Lafayette, LA, Counsel for Defendant/Appellant-Bucyrus-Erie Company, Inc.
(Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges).
SAUNDERS, Judge.
This appeal arises from the trial court's determination that the plaintiff, Jimmy Shay Richard, is a seaman under the Jones Act, 46 U.S.C.App. § 688. The defendant, Mike Hooks, Inc., brings this appeal challenging the trial court's finding. For the following reasons, we affirm the judgment of the trial court.

FACTS
The facts of this case are not disputed by the parties. Hooks is in the business of dredging and marine salvage. It owns five dredge boats, three boosters, seven large tugs, ten to twelve dredge tenders, four to five barges for each dredge, some welding barges, and some skiffs. From August 18, 1992, until March 1993, Richard worked as a welder's helper for Hooks at its dockyard in Westlake, Louisiana. He was scheduled to work five days a week, nine hours a day, but often worked overtime and on weekends. He punched a clock when he arrived at or left Hooks' yard.
Richard performed all of his work at Hooks' yard. As a tacker or welder's helper, he worked with a fitter or a fitter/welder. A portion of his work involved making repairs to and maintaining the vessels used in Hooks' operations. Most repairs that were required to maintain Hooks' fleet of vessels were performed at the yard in Westlake. The vessels were docked at Hooks' facility while the repairs or maintenance work was being performed. Richard's work included fabricating and changing mufflers, replacing portions of decks and motor mounts, and fabricating and changing the sides or bumper rails on the hulls of the vessels. He accompanied the fitter to whom he *150 was assigned onto the vessels for the repairs or maintenance work.
During repairs, Richard would go back and forth from the vessel to the shore to retrieve materials and supplies for the work being performed. Frequently, replacement parts were fabricated in the yard and brought onto the vessels for installation. Equipment was also fabricated and installed on the vessels simultaneously. A walkway from the shore to the vessels provided access for the employees to the vessels.
Richard performed repairs or maintenance work on only stationary vessels that were docked at the yard. The only time he was on a vessel that was not stationary was approximately every month or so when he was required to get on a small boat to assist in moving dredge pipe that had been welded together in Hooks' yard down an adjacent waterway. This would require anywhere from forty-five minutes to two hours. Richard never traveled to a working vessel to perform repairs, and he never ate or slept on a vessel.
Richard's position also required that he do work around the yard, such as picking up scrap iron, unhooking pipe, and unloading barges. He was injured while unloading materials from a truck when the boom of a crane being used to assist in the unloading fell on him, amputating his arm and causing other serious injuries.
This matter was bifurcated, and only the issue of seaman status was tried to the trial court. The trial court concluded that, due to the nature and extent of his work on Hooks' vessels, Richard was a seaman. The judgment was designated as a final judgment pursuant to La.Code Civ.P. art. 1915(B).

LAW OF THE CASE
Prior to trial, Hooks filed a motion for summary judgment asserting that it was entitled to summary judgment on the issue of seaman status. The trial court denied the motion, finding "a reasonable jury could conclude that JIMMY SHAY RICHARD was a `seaman' as a matter of law." Hooks applied for writs to this court and to the supreme court which were denied. Richard argues that because Hooks' writ applications were denied, the trial court's reasons for denying summary judgment became the law of the case which cannot be reviewed on appeal. We do not agree.
A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Sattar v. Aetna Life Ins. Co., 95-1108 (La.App. 4 Cir. 3/20/96), 671 So.2d 550. Further, the principle of "law of the case" is discretionary. It has been held that where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. Turner v. Pelican, 94-1926 (La.App. 4 Cir. 9/15/95), 661 So.2d 1065, writ denied, 95-25[1]3 (La.12/15/95), 664 So.2d 441.
Dupre v. Maynard, 96-1183, pp. 3-4 (La. App. 1 Cir. 3/27/97); 692 So.2d 36, 38, writ denied, 97-1508 (La.9/26/97); 701 So.2d 986.

STANDARD OF REVIEW
The question of seaman status under the Jones Act is a mixed question of law and fact. McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). Louisiana courts of appeal apply the manifest error standard of review in Jones Act cases. Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96); 676 So.2d 89; Day v. Touchard, Inc., 97-1180 (La.App. 5 Cir. 5/27/98); 712 So.2d 1072. Gaston v. G & D Marine Servs., Inc., 93-182 (La.App. 4 Cir. 1/19/94); 631 So.2d 547, writ denied, 94-436 (La.4/4/94); 635 So.2d 1112.
While factual determinations by the trier of fact are given great deference on appeal, if the trial court's decision was *151 based on an erroneous application of law, rather than a valid exercise of discretion, the trial court's decision is not entitled to the deference it would otherwise enjoy. Lasha v. Olin Corp., 625 So.2d 1002 (La. 1993); We Sell Used Cars, Inc. v. United Nat'l Ins. Co., 30,671 (La.App. 2 Cir. 6/24/98); 715 So.2d 656.

ISSUES
Hooks does not dispute the trial court's findings of fact. Instead, it asserts that the trial court's application of the law to the facts was erroneous. Hooks argues that Richard does not meet all of the criteria required for seaman status. It assigns three issues for review, all of which can be summarized as: was the nature of Richard's relationship to Hooks' fleet of vessels sufficient for him to be a seaman?

DISCUSSION
The Jones Act provides a remedy for "[a]ny seaman" injured in the "course of his employment." 46 U.S.C.App. § 688. The following test for determining whether a maritime employee is a seaman has evolved through the jurisprudence of the United States Supreme Court: 1) "an employee's duties must `contribut[e] to the function of the vessel or to the accomplishment of its mission,'" Wilander, 498 U.S. at 355, 111 S.Ct. at 817; 2) a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial both in terms of its duration and nature, Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); and 3) the "substantial connection to a vessel or a fleet of vessels, ... requires a requisite degree of common ownership or control," Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 560, 117 S.Ct. 1535, 1542-43, 137 L.Ed.2d 800 (1997).
The Supreme Court recognized in Chandris, 515 U.S. at 364, 115 S.Ct. at 2188, that its "cases [were] largely silent as to the precise relationship a maritime worker must bear to a vessel in order to come within the Jones Act's ambit." Before addressing the relationship required for Jones Act status, the Court reviewed and considered the impact of early seaman status jurisprudence on the development of the basic principles defining a seaman, as well as its impact on the passage of the U.S. Longshore & Harbor Workers Compensation Act (33 U.S.C.A. § 901, et seq.) (LHWCA) finding:
Our Jones Act cases establish several basic principles regarding the definition of a seaman. First, "[w]hether under the Jones Act or general maritime law, seamen do not include land-based workers."... Through the LHWCA, therefore, Congress "explicitly den[ied] a right of recovery under the Jones Act to maritime workers not members of a crew who are injured on board a vessel." And this recognition process culminated in Wilander with the Court's statement that, "[w]ith the passage of the LHWCA, Congress established a clear distinction between land-based and seabased maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen."
Id. at 358-359, 115 S.Ct. at 2185 (citations omitted).
Chandris continued the distinction between land-based and sea-based maritime workers with regard to seaman status. For the Court, an important focus of seaman status was the "essence of what it means to be a seaman," and it explained:
The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected.".... In our view, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." The duration of a worker's connection to a vessel and the nature of the worker's activities, taken *152 together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.
Id. at 369-70, 115 S.Ct. at 2190-91 (citations omitted) (emphasis added).
Thus, the fact that a maritime employee is injured while on a ship at sea as part of his employment does not qualify him as a member of the vessel's crew, and a maritime employee need not work only on a vessel to qualify as a seaman. Furthermore, a ship repairman is not limited to a remedy under the LHWCA simply because that term is enumerated as an occupation within the LHWCA. Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).
The Court determined that the total circumstances of employment consideration necessarily have a temporal element to them and adopted the general rule developed by the United States Fifth Circuit, Court of Appeals, which requires that a worker spend thirty percent or more of his time "in the service of a vessel in navigation" to qualify as a Jones Act seaman. Chandris, 515 U.S. at 371, 115 S.Ct. at 2191. While the Chandris court qualified its adoption of the thirty percent temporal element, it explained "seaman status is not merely a temporal concept." Id. This qualification is in line with the Fifth Circuit's application of the thirty percent general rule. See Easley v. Southern Shipbuilding Corp., 965 F.2d 1, 5 (5th Cir.1992) (where the court stated: "We do not imply that the quantum or percentage of a worker's time spent on a vessel in navigation is either the sole factor or the determinative factor in the search for seaman status."), cert. denied, 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993).
Richard argues that he is a seaman because thirty percent of his work was performed on vessels in navigation. While this is true we must also address the second prong of the substantial connection requirement: a maritime employee's connection must also be substantial in nature. In this regard, we first consider the Court's discussion in Papai, 520 U.S. 555, 117 S.Ct. 1540, which considered a seaman's exposure to "`the perils of the sea.'" Papai began with a review of the substantial connection requirement:
For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from seabased employees.
Id. at 555, 117 S.Ct. at 1540 (emphasis added).
To determine whether Richard had a connection with Hooks' vessels that was substantial in duration and nature, we consider Richard's total employment relationship with Hooks. See Chandris, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314. This requires that we consider whether Richard's work was of a sea-going nature which exposed him to the perils of the sea. See id Chandris; Papai, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800. The record supports that Richard satisfied the requirement of Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866, that his work contributed to the function of the vessels on which he worked. Richard also satisfied the thirty percent temporal element of the substantial connection requirement. Framing the inherent risks involved in the work Richard performed, Richard produced a marine expert who gave testimony detailing the kinds of "perils of the sea" that Richard faced during his work for Hooks, including hazards of cargo operations, ship's cranes/booms, slippery decks, sinking vessel, fire hazards, etc. If the perils attendant to the duration of a worker's *153 relation to a vessel are essential to the substantial relation requirement, we find this element of the Chandris test met. We emphasize that the query of whether Richard faced any such perils, engaging his status as a Jones Act seaman, can be determined only upon a fact-intensive examination which considers "`the total circumstances of an individual's employment... weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.'" Chandris, 515 U.S. at 370, 115 S.Ct. at 2190. This purely factual finding necessarily falls within the providence of the fact finder. Accordingly, where finders of fact may disagree, reasonable inferences of fact must not be disturbed on review. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Thus, we find no error in the factual determination made by the trial court, nor do we find any legal error leading to the conclusion that Richard was a seaman under the Jones Act. Accordingly, we affirm the judgment of the trial court. All costs of this appeal are assessed to Mike Hooks, Inc.
AFFIRMED.
SULLIVAN, J., dissents and assigns written reasons.
SULLIVAN, J., dissenting:
I respectfully dissent.
In Chandris, Inc. v. Latsis, 515 U.S. 347, 369, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995), the United States Supreme Court maintained the status-based inquiry of its earlier cases, while "recogniz[ing] that seaman status ... should not be some immutable characteristic that maritime workers who spend only a portion of their time at sea can never attain." Id. at 373, 115 S.Ct. 2192 (emphasis added). I find implicit in this statement a requirement that to qualify as a seaman a maritime worker, whether land-based or sea-based, must spend a portion of his time at sea. I believe this concept is inherent in the Jones Act and the jurisprudence interpreting it.
In Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 555, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997), the Supreme Court further discussed the substantial connection requirement of Chandris, explaining that "the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." Papai, 520 U.S. 555, 117 S.Ct. 1540. According to the Court, this requirement "give[s] substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and [is] helpful in distinguishing land-based from sea-based employees." Id. 520 U.S. at 555, 117 S.Ct. at 1540. The majority herein quotes the substantial connection requirement as stated by the Supreme Court in Papai; however, it disregards the Court's instruction to concentrate on whether Richard's duties took him to sea. Instead, it considers only whether Richard was subjected to some of the "perils of the sea" that a seaman faces.
Initially in Papai, the Supreme Court determined that the vessels on which Papai had worked did not qualify as a fleet of vessels because there was no common ownership or control, thus, he was not entitled to seaman status. Thereafter, the Court considered whether his work on vessels owned by Harbor Tug was sufficient for seaman status. The Court's discussion of the facts in this context is pertinent to my conclusion herein.
Papai was injured while painting on the tug Pt. Barrow, which was operated by Harbor Tug. His assignment was expected to last for one day and would not involve sailing with the vessel. Over the two and one-half months prior to his injury, Papai had been employed by Harbor Tug on twelve prior occasions; he had worked on the Pt. Barrow on three or four occasions. The Court noted that Papai's "actual duty on the Pt. Barrow throughout the employment in question did not include any seagoing activity; ... and he was not going *154 to sail with the vessel after he finished painting it." Id. at 559, 117 S.Ct. at 1542. The Court determined that Papai's engagements on the Pt. Barrow which "involved only maintenance work while the tug was docked," were not substantial for seaman-status purposes. Id., 520 U.S. at 558, 117 S.Ct. at 1542.
The Court also considered Papai's occasional work on other Harbor Tug vessels. Papai testified that seventy percent of the work he had performed on those occasions was deckhand work. Even though deckhand work is traditionally seaman work, the Court concluded that it was insufficient for seaman status, stating:
Coupled with the fact that none of Papai's work aboard the Pt. Barrow was of a seagoing nature, it would not be reasonable to infer from Papai's testimony that his recent engagements with Harbor Tug involved work of a seagoing nature....
Id. at 560, 117 S.Ct. at 1542.
The vast majority of Richard's work was maintenance repair work performed dock-side. His occasional, short excursions on small boats to move pipe a short distance from the Hooks' yard was a very small part of his work. He was not a member of the crew of a vessel; his work was not of a "seagoing nature." The fact that his work dockside may have subjected him to some of the same perils faced by seamen is not, in my opinion, substantial for seaman-status purposes.
The majority determine that the trial court's determination was a purely factual finding which cannot be overturned on appeal if they are reasonable. I do not agree. The trial court did not apply the proper legal standard regarding the nature of Richard's work, thus, its findings of fact are not entitled to deference.
For these reasons, I respectfully dissent.