STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-61

ERNEST GUIDRY, ET UX.

VERSUS

ABC INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-C-2180-A
HONORABLE JAMES P. DOHERTY,  JR., DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

AFFIRMED.

Amy, J., concurs in part, dissents in part, and assigns reasons.

L. Lane Roy
Jonathan A. Tweedy
BROWN SIMS PC
1100 Poydras Street
39th Floor
New Orleans, Louisiana  70163
(504) 569-1007
COUNSEL FOR DEFENDANT APPELLANT:
    Tanner Services, LLC

**Blake R. David**
**J. Derek Aswell**
**Broussard & David**
**P. O. Box 3524**
**Lafayette, LA 70502-3524**
**(337) 233-2323**
**COUNSEL FOR PLAINTIFF APPELLEE:**
 **Ernest L. Guidry**
 **Stacey Guidry**

**Kenneth G. Engerrand**
**BROWN SIMS PC**
**1177 W. Loop South, 10th Floor**
**Houston, TX 77027**
**(713) 629-1580**
**COUNSEL FOR DEFENDANT APPELLANT:**
 **Tanner Services, LLC**

**SAUNDERS, J.**

This maritime injury dispute arose from an accident wherein a welder was injured while working on a floating mat for a bulkhead construction project. The Plaintiff, who suffered injuries when a vibrating hammer hit him, brought claims under the Jones Act. The trial court found the Plaintiff to be a seaman under the Jones Act and awarded general and special damages along with legal interest from the date of the accident. Defendant appealed. The issue of the Plaintiff's seaman status and the trial court's award of general damages and prejudgment legal interest are at issue.

**FACTS:**

Ernest Lee Guidry, hereinafter Plaintiff, was employed as a welder by Tanner Services, LLC, hereinafter Defendant, from February 2, 2010, until his injury on May 8, 2012.

Defendant was awarded a contract to construct a bulkhead in Grand Isle, Louisiana, starting in January 2012. The project in Grand Isle, Louisiana, hereinafter "the project," was estimated to last for about three to four months. Defendant had both a land division construction crew and a marine division crew. Plaintiff was reassigned from the land division to work for the marine division for the project. Prior to the project, Plaintiff worked in Eunice, Louisiana, at Defendant's shop.

Three barges and two tugboats were used to move the equipment, supplies, and to store materials, as well as to act as "floating docks" or "work stations" for a crane and preparatory welding. The barges were also used to house an office for supervisors, a tool shed, a welding machine, slings for the crane, a bathroom facility, and a floating mat used by Plaintiff and several other crew members.

The project was done in several parts: preparatory work while on the barge, removal of the old dock, and welding of the sheet piles and the king piles for the bulkhead while on the floating mat. King piles are structural support pilings that are driven into the ground prior to excavation and are welded to the sheet piles. Sheet piles are typically vertical steel pilings that create a wall when driven into the earth.

Once the old dock was removed, the construction of the new bulkhead began. The crane and a vibrating hammer were used for moving and driving the piles into place. The crane operator on the barge would lift a king pile, bring it towards the crew, and the vibrating hammer would drive it into place. The crane would then bring a sheet piling, and the welders on a floating mat would weld the piles together, similar to a metal fence.

Plaintiff spent time on the barges for both preparatory work and down time. Some of the preparatory work Plaintiff performed included welding connectors, cutting holes in sheet piles, and welding sheet piles together. Plaintiff welded portions of the barges, helped tie them off, and participated in a rescue and repair mission aboard one of the tugboats when a barge sailed adrift. Each morning on one of the barges, Plaintiff also attended a job safety analysis conducted with the entire marine division crew.

The majority of Plaintiff's time was spent on the floating mat. The mat was a large piece of wood which was described as a "raft" and "scaffold in the water." It could be moved from piling to piling through the use of ropes or paddles. The floating mat would be lifted out of the water and placed back on the deck of one of the barges for storage. While on the floating mat, Plaintiff was in communication with the barges and tugboats using radio.

According to his timesheets, Plaintiff spent 90% of his time on the water, on both the barges and the floating mat. Plaintiff was driving back and forth to the jobsite in the remaining time.

Plaintiff was injured when the vibrating hammer fell and struck him while he was welding piles on the floating mat. Plaintiff was knocked into the water by the hammer. Plaintiff endured multiple injuries and several surgeries after the incident including the amputation of four fingers, a crushed foot, herniated discs, a concussion, depression, post-traumatic stress, and total and permanent disability.

After a bench trial on the merits, the trial court issued its Reasons for Judgment and found that Plaintiff was a seaman under the Jones Act and imposed liability against his employer in the amount of $3,885,911.69. Judgment was rendered on October 23, 2015.

**ASSIGNMENTS OF ERROR:**

1. The trial court erred in concluding that Plaintiff contributed to the function or mission of a vessel or fleet of vessels to satisfy the first element of the test for seaman status;

2. The trial court erred in concluding that Plaintiff had a connection to a vessel or fleet of vessels that was substantial in both nature and duration to satisfy the second element of the test for seaman status;

3. The trial court erred in determining that Plaintiff was a seaman based only on his work in Grand Isle;

4. The trial court erred in concluding that the floating mat on which Plaintiff worked for Defendant was an appurtenance of a vessel so that any time that Plaintiff spent working the floating mat would be considered to contribute to

3

Plaintiff's connection to a vessel or fleet of vessels for the second element for seaman status;

5. The trial court erred in its award of general damages based on state law, not maritime law, and decisions that are factually inapplicable;

6. The trial court erred in awarding prejudgment interest on all damages from the date of Plaintiff's accident.

**ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, THREE, FOUR:**

In their first four assignments of error, Defendant asserts that the trial court erred in concluding that Plaintiff is a seaman under the Jones Act. We will address these four together since they are governed under the same standard of review and involve a singular issue: Plaintiff's seaman status.

**STANDARD OF REVIEW:**

The question of seaman status under the Jones Act is a mixed question of law and fact. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). When the underlying facts are established, and the rule of law is undisputed, the issue is whether the facts meet the statutory standard. *Id.* Louisiana courts of appeal apply the manifest error standard of review in Jones Act cases. *Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La.7/2/96); 676 So.2d 89; *Day v. Touchard, Inc.*, 97-1180 (La.App. 5 Cir. 5/27/98); 712 So.2d 1072; *Gaston v. G & D Marine Servs., Inc.*, 93-182 (La.App. 4 Cir. 1/19/94); 631 So.2d 547, *writ denied*, 94-436 (La.4/4/94); 635 So.2d 1112.

While factual determinations by the trier of fact are given great deference on appeal, if the trial court's decision was based on an erroneous application of law, rather than a valid exercise of discretion, the trial court's decision is not entitled to

the deference it would otherwise enjoy. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993); *We Sell Used Cars, Inc. v. United Nat'l Ins. Co.*, 30,671 (La.App. 2 Cir. 6/24/98); 715 So.2d 656; *Richard v. Mike Hooks, Inc.*, 99-1631 (La.App. 3 Cir. 10/4/00, 3), 772 So.2d 148, 150-51, *writ granted sub nom*, *Richard v. Hooks, Inc.*, 01-0145 (La. 4/12/01), 788 So.2d 1197, *and rev'd*, 01-0145 (La. 10/16/01), 799 So.2d 462.

In their first assignment of error, Defendant contends the trial court erred in concluding that Plaintiff contributed to the function or mission of a vessel or fleet of vessels to satisfy the first element of the test for seaman status. We disagree.

In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995) (citations omitted), the United States Supreme Court stated the following:

> [W]e think that the essential requirements for seaman status are twofold. First . . . "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: "All who work at sea in the service of a ship" are eligible for seaman status.
>
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

In the current case, the following is an excerpt of the deposition of Mr. David Smith, a representative of one of the appellants, Tanner Services, LLC:

> Q: Fair enough. What – what was this Energy XXI job that Tanner Marine Division [Defendant] was doing?
> A: Building a bulkhead.
> Q: And what was the mission – well, how many – how many vessels were out there, tugboats and barges?
> A: There was, uh, two boats and I think there was [sic] four barges.

5

Q: Okay, and what was the mission of those vessels? What were they there to do?
A: To haul in the, uh, sheet piling, the crane, the – all the equipment.
Q: Okay, and what was the purpose of having those barges and tugboats out there at this Grand Isle location?
A: To build this bulkhead.
Q: Okay, and that's the – that's the mission of this what we call fleet or flotilla of vessels, all these vessels, four, five to six vessels, was to do pile driving work an build a bulkhead?
A: Yes.
Q: Were the barges necessary to accomplish this mission of pile driving and building this bulkhead?
A: Yes.
. . . .
Q: What other kind of work did Lee Guidry [Plaintiff] do on this floating mat?
A: Welding.
Q: And that was all in furtherance of this pile driving and bulkhead construction work, correct?
A: Correct.

This testimony from a representative of Defendant supports the trial court's finding of the fact that the first requisite of the test in *Chandris* is met. Defendant states that the mission of the vessels was to build the bulkhead. Plaintiff's primary job duty was to build the bulkhead via welding. As such, Plaintiff "contribute[d] to function of the vessel or to the accomplishment of its mission." *Chandris, Inc.*, 515 U.S. at 347, 115 S.Ct. 2172.

In their second assignment of error, Defendant contends the trial court erred in concluding that Plaintiff had a connection to a vessel or fleet of vessels that was substantial in both nature and duration to satisfy the second element of the test for seaman status.

Regarding the second component of the *Chandris* test, we must next determine whether Plaintiff was "connected to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris* at 368. It is clear from the record that the tugboats and

6

barges were owned, operated and under the control of Plaintiff's employer and Defendant in this case. These tugboats and barges plainly constituted a fleet of vessels.

Defendant argues in brief that Plaintiff's duties did not take him to sea. They cite *Harbor Tug & Barge Co. v. Papai*, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) in support of this argument. We find this argument misguided.

*Chandris* explicitly denied a "voyage" test, which requires a party to set out to sea to qualify as a seaman under the Jones Act, when it stated, in pertinent part:

> A brief survey of the Jones Act's tortured history makes clear that we must reject the initial appeal of such a "voyage" test and undertake the more difficult task of developing a status-based standard that, although it determines Jones Act coverage without regard to the precise activity in which the worker is engaged at the time of the injury, nevertheless best furthers the Jones Act's remedial goals.

*Id*. at 358.

Rather than perform a voyage test here, we must look to the record for support of the trial court's finding that Plaintiff was a seaman under the second part of the *Chandris* test. Accordingly, we must determine whether Plaintiff's connection to this fleet was substantial in terms of its duration. *Id*. at 368. We find such support.

Defendant further contends the trial court erred in determining that Plaintiff was a seaman based only on his work in Grand Isle.

As a general rule, a worker who spends less than 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. *Id*. at 371. We see no reason to limit the seaman status inquiry, [as Defendant contends], exclusively to an examination of the overall course of a worker's service with a particular employer. *Id*. at 371-372.

Regarding the duration of the work Plaintiff performed and its connection to the fleet, Plaintiff testified that he spent 90 percent of his time at work during the project either on the barges or the floating mat. The following is the pertinent testimony of Plaintiff:

Q: How much time on this Tanner Marine job, if you could give it to us in a percentage, did you spend on the water? When you were actually out at Energy XXI [project location] at the dock doing your work, how much time was on the water versus land, either barge or on a – on a raft?
A: Fifty percent fir [floating] mat and then forty percent the barge and then ten percent land.

This testimony was corroborated by a representative of the Defendant and follows in pertinent part:

Q: Okay, do you have a breakdown of how much time he [Plaintiff] spent on the floating mat versus the barge versus land or anything like that?

A: Yes.
Q: And what is it?
A: Uh, probably 60 percent of his time was on the mat.
Q: On the mat, okay, and how much of his time would be on the barge?
A: Thirty, 30 percent, ten, time on the dock, ten percent on the dock.

As such, there is only one reasonable view of this evidence, that Plaintiff worked well above the generally required thirty percent of his time on the vessels under the jurisdiction of the Jones Act. We find no error by the trial court in its judgment that Plaintiff was a seaman under the second requirement of *Chandris*.

After establishing Plaintiff's connection to the fleet was substantial in duration, we must resolve whether Plaintiff's connection to the fleet was substantial in nature. We find that Plaintiff did have a connection that was substantial in nature to this fleet of vessels based on his work and time spent on the barges and most substantially, the time spent on the floating mat.

Although it is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel . . . a seaman must be doing the ship's work. Id. at 357. Further, the Court found that "seaman status is not coextensive with seamen's risks." Id. at 361. Ultimately, the Court found "it is not the employee's particular job that is determinative [of seaman status under the Jones Act], but the employee's connection to a vessel." Id. at 364.

Plaintiff was employed primarily for welding, but he also attended safety meetings, assisted with navigation of the barges, did repair work, and completed various other ancillary duties.

Defendant argues in brief that this court should consider Plaintiff's entire span of employment including the two and a half years prior to Plaintiff's injury. Under *Chandris*, this argument was specifically addressed when the court stated, "[W]e see no reason to limit the seaman status inquiry . . . exclusively to an examination of the overall course of a worker's service with a particular employer. *Chandris* at 371-72.

As evidenced through testimony, Plaintiff's duties contributed to the barges' mission and function, the building of the bulkhead, thus making them inherently vessel-related and fulfilling of the substantial nature requirement of the *Chandris* test. See *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781 (9th Cir.2007) and *Delange v. Dutra Constr. Co. Inc.*, 183 F.3d 916 (9th Cir.1999). As such, we find that Plaintiff meets every part of the *Chandris* test and that Plaintiff's connection to the fleet of vessels was substantial in both its duration and its nature. *Id*. at 368.

Next, in their fourth assignment of error, Defendant contends the trial court erred in concluding that the floating mat on which Plaintiff worked for Defendant was an appurtenance of the vessels so that any time that Plaintiff spent working the

floating mat would be considered to contribute to Plaintiff's connection to a vessel or fleet of vessels for the second element of seaman status. We find this contention lacks merit.

The issue before us is to decide whether the trial court erred in concluding the floating mat was an appurtenance of the vessels, the barges owned and operated by Defendant. As indicated in *Parks v. Pine Bluff Sand & Gravel Co.*, 712 So.2d 905 (La.App. 3 Cir. 1998), an appurtenance must be essential to the vessel's mission, the vessel cannot perform the mission without the appurtenance, despite the appurtenance being "readily removable." *Id.* at 911.

The following testimony from a representative supports the aforementioned nature of the floating mat as an appurtenance:

> Q: What do y'all use that mat for in the water?
> A: Well, like I say [sic], to keep floating, you know, so you can walk on it. It floats. Like I say [sic] it's a – a floating mat.
> Q: Okay. Did it help you guys do this bulkhead job?
> A: Yeah.
> Q: Did you need the mat to do the job?
> A: Right, yeah.
> Q: And you needed the barge and the crane to do the job, too?
> A: Yeah.
> Q: You needed the mat to help with getting the sheet pilings in place and stabbing them in place?
> A: Right, correct.

After considering the mission of the vessels and the process involved in constructing the bulkhead in the case before us, we find the trial court did not err in finding that the floating mat is an appurtenance of the vessel. We agree with the trial court that the floating mat "[w]as a necessary requirement on this project[.]" We find that the trial court did not err in this conclusion based on the record before us.

Accordingly, we find no merit to Defendant's assignments of error questioning the trial court's classification of Plaintiff as a seaman under the Jones Act or the classification of the floating mat as an appurtenance of the vessels.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

In their fifth assignment of error, Defendant contends the trial court erred in its award of general damages based on state law, not maritime law, and decisions that are factually inapplicable. We disagree.

Defendant argues that seamen are not entitled to general damages, citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32-33, 111 S.Ct. 317, 326, 112 L.Ed.2d 275, 291 (1990). This case dealt primarily with wrongful death and survival claims brought by the mother of a seaman fatally assaulted by another crew member. The court in Miles states that "the Jones Act does not explicitly limit damages to any particular form." *Miles* at 325. The court in *Miles* also found that the "Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss." Id. at 326. We find this specific limitation inapplicable to the case at hand due to the distinction of the cases' facts and type of claims brought before the courts.

The trial court in the case before us found that Louisiana law provided an avenue for recovery under general damages not limited to pain and suffering. The trial court cites in support of their decision *Williams v. Enriquez*, 41,200 (La.App. 2 Cir. 6/28/06, 7), 935 So.2d 269, which states, in pertinent part:

> General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. *Nelson v. City of Shreveport,* 40,494 (La.App. 2d Cir.01/27/06), 921 So.2d 1111, *writs denied,* 06-0453, 06-0600 (La.05/05/06), 927 So.2d 313, 317; *Sallis v. City of Bossier City,* 28,483 (La.App. 2d

11

Cir.09/25/96), 680 So.2d 1333, *writs denied,* 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063.
*Id*. at 274.

The standard for appellate review of general damage awards has been discussed in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993). It states, in pertinent part, "[d]iscretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Id. at 1261. The court in Youn stated further:

> Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. *Id*.

With consideration for Plaintiff's amputation of four fingers, crushed foot, herniated discs, post-traumatic stress, depression, flashbacks, nightmares, concussion, and suicidal thoughts, and the court's vast discretion on the matter, we do not find the trial court erred in their award of general damages and that it would be an exercise in futility to remand on this particular issue.

**ASSIGNMENT OF ERROR NUMBER SIX:**

In their sixth assignment of error, Defendant contends the trial court erred in awarding prejudgment interest on all damages from the date of Plaintiff's accident. We disagree.

This court in *Watterson* stated the following on the issue of prejudgment interest:

> When as in this case a Jones Act suit is brought under the court's admiralty jurisdiction (tried to a judge), the award of prejudgment interest lies within the sound discretion of the trial judge. Doucet v. Wheless Drilling Company, 467 F.2d 336 (5th Cir.1972); Williams v. Reading and Bates Drilling Co., 750 F.2d 487 (5th Cir.1985). *Watterson v. Mallard Bay Drilling,*

*Inc.*, 93-1494 (La.App. 3 Cir. 10/12/94, 14), 649 So.2d 431, 439, writ denied, 94-2769 (La. 1/27/95), 650 So.2d 241

We conclude that this result is reasonable and not an abuse of the trial court's discretion.

## DISPOSITION:

Defendant, Tanner Services, LLC, raised six assignments of error. For the foregoing reasons, we affirm the trial court's finding of Ernest L. Guidry's seaman status under the Jones Act and affirm the trial court's award of general damages and prejudgment interest. We assess all costs of this appeal to Defendant, Tanner Services, LLC.

**AFFIRMED.**

NUMBER 16-61

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


ERNEST GUIDRY, ET UX.

VERSUS

ABC INSURANCE COMPANY, ET AL.


AMY, J., concurring in part and dissenting in part.

Like the majority, I find that the trial court's finding as to the plaintiff's Jones Act seaman status is supported by the record. I further agree that the damages awarded must be affirmed. However, I do not join the majority's suggestion that the trial court determined that "general damages" were available beyond the type of pecuniary damages available for Jones Act recovery.

Rather, the trial court's reasons for ruling indicate that its award of damages was related to pain, suffering, and physical limitations associated with the significant injuries sustained. That type of award is plainly recoverable under the Jones Act. *See, e.g.*, *Todd v. Delta Queen Steamboat Co.*, 07-1518, p. 11 (La.App. 4 Cir. 8/6/08), 15 So.3d 107, 115 (considering an award of "general damages" within the context of the Jones Act and stating that a Jones Act plaintiff "may recover all of his pecuniary losses (e.g., loss of earning capacity, medical expenses, and pain and suffering.)"). Additionally, in its appellant's brief to this court, Tanner Services, LLC concedes that Jones Act seamen are entitled to "pecuniary damages and pain and suffering." In my opinion, whether styled as "general damages" or otherwise, the trial court's award is supported by the record given the grievous injuries sustained by this plaintiff.

Additionally, I respectfully dissent from the majority's affirmation of the prejudgment interest as awarded.  Rather, I would reverse the trial court's award of interest from date of the accident on the award of future damages, finding such an award is inconsistent with the supreme court's ruling in *Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So.2d 89.  While the supreme court noted that prejudgment interest is due "on the sums awarded as past damages" in a Jones Act matter, it further determined that a trial court has "no authority to grant interest on the general maritime and Jones Act awards for *future* damages, be they future lost earnings or future pain and suffering[.]"  *Id.* at 97.  Accordingly, I would reverse this aspect of the trial court's judgment and remand for reformation of the judgment as to interest.

For these reasons, I concur in part and dissent in part.